David DIXON, Ricardo Ramirez, Ophelia Casey, Dominga Carrasquillo, Joanne Lockett, individually and on behalf of all others similarly situated, Plaintiff,

v.

Margaret M. HECKLER, as Secretary of the Department of Health and Human Services, Defendant.

Eulalia TEREZ, individually and on behalf of all others similarly situated, Plaintiff,

v.

Margaret M. HECKLER, as Secretary of the Department of Health and Human Services, Defendant.

Carmen FELICIANO, individually and on behalf of all others similarly situated, Plaintiff,

v.

Margaret M. HECKLER, as Secretary of the Department of Health and Human Services, Defendant.

Tomasina GONZALEZ, Plaintiff,

v.

Margaret M. HECKLER, as Secretary of the Department of Health and Human Services, Defendant.

Nos. 83 Civ. 7001 (MEL), 83 Civ. 8264 (MEL), 83 Civ. 8609 (MEL) and 84 Civ. 110 (MEL).

United States District Court, S.D. New York.

June 22, 1984.

---

Conrad A. Johnson, David Goldfarb, John E. Kirklin, Director of Litigation, Civ. Appeals and Law Reform Unit, Arthur J. Fried, Supervising Atty., Administrative Law Unit, The Legal Aid Soc., New York City, for plaintiffs; Jon C. Dubin, Ian Feldman, Stephen J. Loffredo, Bronx Neighborhood Office, Nancy Morawetz, The Legal Aid Soc., Civ. Appeals and Law Reform Unit, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Susan E. Harkins, Asst. U.S. Atty., New York City, Tamar Klein, Asst. Regional Atty., Dept. of Health and Human Services, Brooklyn, N.Y., of counsel.

LASKER, District Judge.

### I.

These cases present a question whose determination has twice been reserved by the Court of Appeals for this Circuit:[1] whether the denial of federal disability claims under the so-called "severity regulation" adopted by the Secretary of Health and Human Services (the "Secretary") violates the Social Security Act (the "Act") because the regulation conflicts with the definition of "disability" contained in the Act. Under the regulation,[2] claims for disability benefits under the Supplemental Security Income ("SSI") or Old Age Survivors and Disability Insurance ("OASDI") programs are denied without regard to the claimant's age, education, employment experience, ability to return to prior work, or other vocational factors, if the claimant's impairment is judged to be "not severe" based on medical criteria alone. In recent weeks, two judges of this Court, ruling on individual Social Security appeals, have reversed the Secretary's denial of benefits under the severity regulation, holding that the severity regulation conflicts with the

---

1. *Keith v. Heckler,* 732 F.2d 1089 at 1093–1094 (2d Cir.1984); *Chico v. Schweiker,* 710 F.2d 947, 952–53 (2d Cir.1983).

2. 20 C.F.R. §§ 404.1520(c), 416.920(c) (1983).

statutory definition of disability and is invalid.[3] In the instant cases, the individual plaintiffs, on behalf of themselves and all other similarly situated, together with the State of New York and the Commissioner of the New York State Department of Social Services, seek declaratory and injunctive relief against the Secretary's use of the severity regulation in evaluating disability claims, and against her policy of refusing to consider the combined effects of impairments found to be "non-severe."[4]

Jurisdiction is alleged under 42 U.S.C. §§ 405(g) and 1383(c)(3), which provide for judicial review of the Secretary's decisions as to disability benefits; 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1361 (mandamus jurisdiction).[5] This memorandum addresses plaintiffs' motion for class certification and for a preliminary injunction. In a separate memorandum issued this date, motions to intervene by the State of New York, the Commissioner of the New York State Department of Social Services, and claimants Ricardo Ramirez, Ophelia Casey, Dominga Carrasquillo, and Joanne Lockett have been granted.

A. Statutory and Regulatory Background

The OASDI and SSI programs provide for the payment of benefits to disabled persons. Under both programs, a person is considered disabled if he or she is unable

"to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..."[6]

The Act provides that "for purposes of" applying this definition, an individual

"shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work...."[7]

The Secretary is authorized to establish rules and regulations, consistent with the Act, governing the determination of disability claims.[8]

Before 1978, the Secretary's regulations[9] set forth a general discussion of the factors to be applied in evaluating disability claims. In pertinent part, it was stated that disability

"is determined from all the facts of [the] case. Primary consideration is given to the severity of the individual's impairment. Consideration is also given to such other factors as the individual's age, education, and work experience. Medical considerations alone can justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of

---

**3.** *Glover v. Heckler*, 588 F.Supp. 956 (S.D.N.Y. 1984); *Boiano v. Heckler*, 586 F.Supp. 732 (S.D.N.Y.1984). The regulation was also held invalid in a decision in the Eastern District of California which granted class certification and preliminary injunction motions. *Smith v. Heckler*, Civ. No. S–83–1609, slip op., (E.D.Cal., June 6, 1984). The opinion was brought to our attention immediately prior to the issuance of this memorandum.

**4.** Plaintiffs also contend that the Secretary adopted the severity regulation without prior notice and opportunity for public comment, as required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 and that the Secretary's failure to establish ascertainable standards for

determining whether an impairment is "severe" violates their constitutional right to due process.

**5.** In view of our conclusions in this decision as to the existence of jurisdiction under section 405(g) and 1383(c)(3), we need not address the parties' arguments as to the other sources of jurisdiction asserted by plaintiffs.

**6.** 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

**7.** 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

**8.** 42 U.S.C. §§ 405(a) & 1383(d)(1).

**9.** This opinion uses the word "Secretary" to refer both to the current Secretary and her predecessors, as the context may require.

sight or hearing, or other slight abnormality or a combination of slight abnormalities. On the other hand, medical considerations alone ... can, except where other evidence rebuts a finding of 'disability'... justify a finding that the individual is under a disability where his impairment ... is listed in the appendix to the subpart...." [10]

In 1978 the Secretary revised the regulations, establishing a five-step sequential procedure for determining whether a claimant is disabled.[11] These regulations were modified again in 1980, primarily to make their language clearer.

Under the existing regulations, if the claimant is found not to be disabled under any one of the sequential tests, the analysis ends and the remaining steps of the analysis are not completed. As the first step, the Secretary ascertains whether the claimant is working; if so, a finding of "not disabled" follows. Next (step 2), the Secretary determines, solely on the basis of medical factors, whether the claimant has a "severe" impairment which "significantly limits [his] physical or mental ability to do basic work activities." The regulation specifically provides that at this step the Secretary "will not consider your age, education, and work experience." [12] If the claimant is determined to have a "severe" impairment under this definition, the Secretary next considers (step 3) whether the impairment is one which is listed in Appendix 1 of the regulations; if so, the claimant is found to be disabled without requirement of further proof that the impairment prevents him from working. The fourth step comes into play if the claimant's impairment, though deemed "severe" under step 2, is not a "listed" impairment under step

3. In such cases, the Secretary determines whether, despite the claimant's impairment, he is able to perform his past work. If not, the Secretary determines (step 5) whether, considering the claimant's age, education, and work experience, his impairment prevents him from doing any other work available in the national economy. If the claimant cannot, he is found to be disabled.[13] In addition to these regulations, the Secretary issued a Social Security Ruling in 1982 (SSR 82–55) which instructs Social Security administrators not to consider the combined effects of impairments which do not individually meet the Secretary's "severity" standard. Accordingly, someone who suffers several impairments deemed nonsevere will be denied benefits regardless of their combined effect. SSR 82–55 also lists 20 specific impairments which the Secretary has determined are non-severe *per se*. Moreover, the ruling is binding on all Social Security Administration personnel, including administrative law judges and the Appeals Council, and was made effective retroactively to August 20, 1980.

### B.

The named plaintiffs were found "not disabled" under the severity regulation (the second step of the Secretary's sequential evaluation), and thus were denied benefits on the grounds that the medical evidence alone failed to establish the existence of an impairment which significantly limited their ability to perform basic work activities. A description of the cases of some of the named plaintiffs illustrates the operation of the Secretary's policies.

David Dixon suffers pain in his right hip from a serious fracture which he sustained

---

**10.** 20 C.F.R. § 404.1520(a) (1968).

**11.** 20 C.F.R. §§ 404.1520, 416.920 (1983).

**12.** 20 C.F.R. §§ 404.1520(c), 416.920(c) (1983). The regulation defines "basic work activities to include:

"(1) Physical functions such as walking, standing sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment.
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting."
§ 404.1521(b); 416.921(b).

**13.** *See generally Chico v. Schweiker,* 710 F.2d 947 (2d Cir.1983).

in an automobile accident in 1969, and attends the Harlem Rehabilitation Center as an outpatient for six hours a day, five days a week. He is blind in one eye, (also as a result of the automobile accident) suffers from a personality disorder, and has a verbal I.Q. of 68. The Administrative Law Judge ("ALJ") found each of Dixon's impairments to be non-severe under the second step of the five-step disability analysis. As to the hip fracture, The ALJ found that if Dixon underwent "intensive therapy" he would "possibly enhance [sic] his current disability." Dixon's blindness in one eye was found not to be a severe impairment because he retained essentially normal sight in his other eye. As to Dixon's mental capacity and psychological problems, the ALJ stated that there was "a good possibility" that these problems would not prevent Dixon from working if he obtained "retraining and some program to help [him] with his motivation." Because the ALJ considered each impairment not to be severe based on the medical evidence, he did not consider (and, under the regulation, was not free to consider) whether Dixon was able to return to his last job (which had ended in 1974), or whether in view of Dixon's impairments and his age, education, and work experience, he was capable of performing any job in the national economy. There is no indication that the ALJ considered the combined effect of Dixon's impairments. The Appeals Council affirmed.[14]

Joanne Lockett worked as an operator and supervisor for the telephone company for twenty years, until she suffered an acute onset of brain stem syndrome in October 1981. She has suffered, as the ALJ found, "severe neurological and psychological impairments" as a result, manifested in particular by substantial difficulty with memory. The ALJ found that Lockett was unable to return to her prior job, and that she was disabled from October 1981 to December 1982. However, he decided that she was no longer disabled as of December 1982 because at that time she began participating in a sheltered workshop at the Federation for the Handicapped. In the ALJ's view, this participation meant that

> "her condition was no longer severe, in that it no longer significantly limited her ability to engage in basic work activities or work related functions, in terms of an ordinary work day on a regular and continuing day-to-day basis [sic] in the competitive job market."

He held that, in view of this finding as to non-severity for the period beginning in December 1982, "it is not material whether the claimant was then able to sustain any of her past relevant work or any other work which exists in significant numbers in the national economy."[15] Her administrative appeal is pending.

Dominga Carrasquillo's impairments of hypertension, arthritis, chest pain, and pain in her lower extremities were all found to be non-severe in a very brief decision by the ALJ who presided at her hearing. Her impairments were not considered in combination. Carrasquillo was 59 years old at the time of her hearing, has a third grade education, is illiterate in English, and last worked in 1975 as a buttonhole maker in a factory. None of these factors was considered, however, because the ALJ found that her impairments did not meet the "severity" threshold on the basis of medical evidence alone.[16] Carrasquillo's administrative appeal is pending.

Ricardo Ramirez has suffered injuries to his back in two separate accidents, one in 1961 and one in 1979, and, as the ALJ found, "has a chronic lower back pain syndrome with degenerative changes at L5–S1 levels." His bending and straight leg lifting are limited to 30 and 20 degrees, respectively. Ramirez is also completely blind in his right eye. The ALJ found that Ramirez' impairments did not meet the severity requirement. Accordingly, the ALJ

---

14. *See* Transcript of Proceedings, pp. 3, 7–16.

15. *See* Hearing Decision, Exhibit C to Affidavit of Nancy Morawetz, dated January 26, 1984 ("Morawetz Affidavit").

16. *See* Hearing Decision, ex. D. to Morawetz Affidavit.

failed to perform any vocational analysis, noting specifically that under the regulations

> "medical considerations alone can justify a finding that an individual is not under a disability where the medically determinable impairment is not severe without consideration of the vocational factors."

The ALJ did not consider the combined effect of Ramirez' impairments. Ramirez was 54 years old at the time of the hearing, with a high school education, and has not worked since his last accident.[17] The Appeals Council affirmed.

## II. Motion for Preliminary Injunction

### A.

Preliminary relief is sought by those members of the proposed class whose benefits were terminated pursuant to the policies challenged in this action on or since July 20, 1983, at any stage of the administrative process, or who had challenges to such decisions pending on July 20, 1983. Because the complaint was filed on September 23, 1983, these class members all meet the Act's statute of limitations requiring that actions for judicial review of the Secretary's decision be filed within 60 days of the date of the decision.[18] However, the sub-class seeking preliminary relief includes claimants whose appeals before the Appeals Council were still pending and who therefore have not yet exhausted administrative remedies. Accordingly, we must consider the Secretary's argument that the Court is without jurisdiction over those claimants who have not yet exhausted their administrative remedies as required by Section 405(g).

As is often noted, the requirement of exhaustion of administrative remedies has a "waivable" and a "non-waivable" element. The non-waivable element requires that a plaintiff present his claim in some form to the Secretary. Full exhaustion of administrative remedies is, however, a "waivable" element. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The non-waivable requirement has been satisfied here. All of the plaintiffs who move for preliminary relief have presented their claims, which have, in all cases, either been denied or terminated at some level of the administrative process. The Secretary's argument is directed to the requirement of full exhaustion, which may be waived by a court under certain circumstances:

> "A waiver of the exhaustion requirement may be inferred where the plaintiffs' legal claims are collateral to their demand for benefits, where exhaustion would be a *pro forma* or futile gesture, or where the harm suffered in the interim would be irreparable in the sense that no *post hoc* relief would be adequate."

*Smith v. Schweiker,* 709 F.2d 777, 780 (2d Cir.1983), *citing Mathews v. Eldridge,* 424 U.S. at 330–31, 96 S.Ct. at 895–896.

The Secretary contends that, under the analysis employed in *Smith,* plaintiffs do not satisfy the collaterality and futility grounds for waiver of exhaustion.[19] Even if the Secretary were correct as to those grounds, however, we believe that waiver of exhaustion is appropriate because plaintiffs have demonstrated that they will suffer irreparable harm for which *post hoc*

17. *See* Hearing Decision, Ex. I to Morawetz Affidavit.

18. 42 U.S.C. §§ 405(g), 1383(c). The class actually includes claimants who received final decisions within 65 days of the filing of the complaint, because the regulation assumes that the decision is received within 5 days of its mailing.

19. *Smith* held that a class-action challenge to the Secretary's practice of terminating disability benefits without a finding of medical improvement did not raise an issue which was collateral to plaintiffs' demand for benefits, since the plaintiffs there were not "asserting a right to a

particular kind of procedure" (as was true in *Eldridge* ) but were claiming "only that, depending on the evidence adduced, an illegal termination of their benefits may result from the application of the Secretary's test for current disability." *Smith v. Schweiker,* 709 F.2d at 780. *Smith* also held that exhaustion could not be deemed futile because the plaintiffs' claims for benefits might be denied or granted on other grounds at other stages of the administrative process. The decision noted that the benefits of every named plaintiff and intervenor had actually been restored as a result of the administrative appeal process. *Id.*

relief would be inadequate. Unlike the *Smith* plaintiffs, who were all receiving disability benefits at the time of the lawsuit, none of the named plaintiffs in this case are receiving benefits. As their affidavits demonstrate, without benefits their respective financial situations are precarious.

■ Moreover, neither the ALJs nor the Appeals Council, of course, have the authority to declare the Secretary's severity standard unlawful, but instead are required to apply that standard (along with SSR 82–55) to each claim. In such circumstances, to require plaintiffs to pursue a process which will be guided by a procedure they claim is illegal, and which has already resulted in an initial denial of benefits, on the possibility that the claim will ultimately be disposed of on some other basis, is unwarranted, particularly since the legal issue raised here is not one which is likely to "benefit from further factual development and refinement through the administrative process." *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 10, 15, 77 L.Ed.2d 1431 (1983) (Rehnquist, J.) *application to vacate stay denied,* —— U.S. ——, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983); *cf. Smith, supra,* 709 F.2d at 780–81 (legal issue raised by plaintiffs was "unformulated" and was not presented "in the context of a concrete case").[20]

### B. Standard for Preliminary Relief

Plaintiffs seek a preliminary injunction (1) prohibiting the Secretary from denying or terminating Social Security or SSI benefits due to the asserted non-severity of the claimant's impairments; (2) directing the Secretary to restore benefits to all members of the proposed class who (a) received decisions, finding them no longer eligible for benefits that were rendered at any stage of the administrative process, on July 20, 1983 or thereafter, or (b) had pending challenges to such decisions on July 20, 1983; and (3) directing the Secretary to reopen the applications of all class members whose applications for benefits have been denied by the Secretary, at any stage of the administrative process, since July 20, 1983, and to redetermine these applications without reference to the threshold severity test.

To obtain such relief, a plaintiff must ordinarily demonstrate irreparable harm, and either a likelihood of success on the merits or the existence of a fair ground for litigation, with the balance of hardships decidedly in his favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

The Secretary, however, argues that on this motion the plaintiffs must show a likelihood of success (not merely a fair ground for litigation) because the issuance of an injunction will burden the Social Security Administration and cause harm to the public interest. The Secretary relies, *inter alia,* upon *Union Carbide Agricultural Products v. Costle,* 632 F.2d 1014, 1018 (2d Cir.1980), *cert denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981), which states

"When Congress authorizes or mandates governmental action that is in the public interest, more than a 'fair ground for litigation' must be shown before the action will be stopped in its tracks by court order."

Plaintiffs argue, however, that Congress has not authorized the use of a severity standard in isolation from vocational factors, and that it is in the public interest that the disability program be administered as Congress intended. We believe in litigation such as this no party has an exclusive claim of the public interest, and accordingly we doubt the appropriateness of applying the doctrine of *Union Carbide.* In any event, the question is not dispositive, because, as discussed below, we conclude that plaintiffs have in fact established a likelihood of success on the merits.

---

**20.** The facts of this case are also clearly distinguishable from those in *Heckler v. Ringer,* —— U.S. ——, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), where waiver of exhaustion was denied in part because individuals asserting claims similar to those presented by the *Ringer* plaintiffs were routinely receiving favorable decisions from the ALJs. *Id.* —— U.S. at ——, 104 S.Ct. at 2023. Here, plaintiffs have all received unfavorable ALJ decisions.

## C. The Severity Regulation

As noted previously, the question of the lawfulness of the Secretary's severity regulation has been specifically reserved by the Second Circuit on at least two occasions. *See Keith v. Heckler,* 732 F.2d 1089 at 1093–1094 (2d Cir.1984); *Chico v. Schweiker,* 710 F.2d 947 (2d Cir.1983). In *Chico,* Judge Friendly noted

> "the close question of the validity of the 'severity' regulation, involving as it does a seeming conflict between the letter of § 423(d)(2)(A), on the one hand, and, on the other, the Secretary's understandable desire to supply ... some threshold that a claimant must pass before the Social Security Administration is required either to apply the Appendix 2 guidelines or to call vocational experts, and the Supreme Court's recognition, reaffirmed in its recent decision in [*Heckler v.*] *Campbell,* that Congress has 'conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act,' *Schweiker v. Gray Panthers,* 453 U.S. 34, 43 [101 S.Ct. 2633, 2640, 69 L.Ed.2d 460] (1981)."

710 F.2d at 953.

In view of the Secretary's authority to establish regulations implementing the disability provisions of the Act, our review "is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The starting point for this analysis, as *Chico* points out, is the language of the statutory definition of "disability". A "disability" is a

> "physical or mental impairment or impairments ... of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any kind of substantial gainful work which exists in the national economy."

§§ 423(d)(2)(A), 1382c(a)(3)(B).

In "implementing" this definition, the Secretary has separated the inquiry as to the severity of the impairment from the inquiry as to the combined effect of a claimant's impairments and his age, education, and work experience on his ability to engage in substantial gainful work. As the severity regulation states, the claimant must first establish, based on medical factors alone, that his impairment is severe—that is, that it significantly limits his ability to perform "basic work-related activities" —and at this stage of the analysis the SSA "will not consider your age, education, and work experience." The plaintiffs argue that this requirement is flatly inconsistent with the statutory definition, which, they contend, requires that the severity of an impairment be evaluated in terms of the combined effect of the impairment and the claimant's age, education and work experience. The Secretary argues that the statute should be read to establish three independent requirements—that a claimant have a severe impairment, that he be unable to return to his prior employment, and that his impairment prevent him, in light of his age, education, and work experience, from performing any other substantial work.

■ In our view, the Secretary's interpretation, which at first glance may appear merely to have arranged the factors mentioned in the statute in an orderly fashion, has resulted instead in a substantive rewriting of the statute. The statute speaks of an impairment (or impairments) which is *"of such severity that"* the claimant cannot, "considering his age, education and work experience," perform any substantial gainful work. Under the severity regulation, by contrast, the Secretary had found that plaintiffs do not have severe impairments, and therefore are not disabled, *without* considering whether their impairments, in light of their age, education, and work experience, permit them to perform gainful work. This result is simply contrary to the statutory definition.

The Secretary argues, however, that it is clearly within her authority to establish a threshold of medical severity which a claimant must demonstrate before the Secretary

is required to carry out a full vocational analysis of the claimant and of his ability to obtain a job available in the national economy. The Secretary points out that such a threshold showing was required in the prior regulations, under which a claim could be denied on medical grounds alone if the claimant had only a "slight" impairment, defined as a "slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities." [21] According to the Secretary, the 1978 regulations were not intended to effect a substantive change in the level of severity that must be shown before vocational factors will be considered, but rather to clarify the circumstances under which a finding of not disabled could be justified on the basis of medical considerations alone. As the Secretary stated in 1978 in the commentary accompanying the proposed regulations:

> "there is a point in the range of impairment severity below which the effects of the impairment(s) have such a minimal effect on the individual that they would not be expected to interfere with his or her ability to work, irrespective of his or her age, education, and work experience." [22]

The Secretary contends that the screening out of claims in which the impairment is plainly *de minimis* is a long-standing SSA practice which is necessary to the efficient running of the SSI and OASDI programs.

There are several flaws in these arguments. First, although the Secretary's 1978 commentary on the severity regulation appears to describe what might be considered a *de minimis* standard for screening out unfounded claims, the regulation itself does not use the Secretary's language. The regulation does not describe non-severe impairments as ones which "have such a minimal effect ... that they would not be expected to interfere with his or her ability to work irrespective of his or her age, education, and work experience." Instead, the severity regulation states:

> "(c) *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education and work experience...." [23]

The named plaintiffs' cases illustrate that this regulation constitutes much more than a *de minimis* standard. Plaintiff Dixon, for example, who is completely without sight in one eye, has a personality disorder and a verbal I.Q. of 68, and requires rehabilitation therapy five days a week, can hardly be said to have impairments of such a *de minimis* nature that they would not be expected to interfere with anyone's ability to work irrespective of vocational factors. Indeed, in our view none of the named plaintiffs in this action have impairments which could be considered to be of the *de minimis* nature described by the Secretary, or which could be viewed as fitting the pre-1978 definition of a "slight" impairment. Even if the Secretary may be assumed to have authority to screen out claims in which the impairment is clearly *de minimis,* the severity regulation as written and as applied does not appear to be such a standard.

Second, the available statistics on the numbers of claims denied on the basis of the severity regulation strongly suggest that the regulation's adoption represented not merely a fine-tuning of previous methods of determining disability, but instead constituted a substantial change in the administration of the benefits system. In 1975, when the "slight impairment" regulation was in effect, only 8 percent of disability claims were denied based on medical grounds alone—*i.e.,* on the ground that the claimant suffered from only a "slight" impairment. As of 1982, the percentage of claims denied on the basis of medical considerations alone under the severity regula-

---

**21.** 20 C.F.R. § 404.1520(a) (1968).

**22.** 43 Fed.Reg. 9284, 9296 (1978).

**23.** 20 C.F.R. §§ 404.1520(c), 416.920(c) (1983).

tion adopted in 1978 had climbed to 40 percent.[24]  Although of course we cannot rule out the possibility that other factors apart from the change in the severity regulation may have contributed to this increase, it would be absurd to assume that the change in the regulations has not played a substantial part in it.

Third, the Secretary's own 1980 statement explaining the intent of the 1978 amendments belies her current contention that the severity regulation was not intended to raise the level of severity which a claimant must show before vocational factors will be considered.  As discussed earlier, the 1978 regulations were slightly modified in 1980, primarily to make their language more understandable to claimants. In publishing these modifications, the Secretary commented on the severity regulation as follows:

> "Although this evaluation approach to impairments that are not severe has been in the regulations for some time, we expanded it in 1978.  ...  We anticipated that greater program efficiency would be obtained by this provision by limiting the number of cases in which it would be necessary to follow the vocational evaluation sequence...." [25]

Although the Secretary now argues that this statement does not reflect an intent to limit entitlement to benefits by the adoption of the 1978 regulations, there can be no blinking the Secretary's 1980 statement that the regulation *was* intended to "limit[ ] the number of cases" in which vocational factors would be considered—something which, it would appear, can only be accomplished by increasing the number of cases decided on medical grounds alone.

Moreover, the severity regulation cannot be persuasively defended by arguing that the denial of substantial numbers of claims

on medical grounds alone is merely the flip side of the Secretary's policy of granting claims on medical grounds alone where the claimant's impairment is among those listed in Appendix 1 of the regulations.[26]  If the Secretary believes that it is operationally more efficient to concede, in effect, that certain impairments are *per se* disabling, than to conduct vocational evaluations for claimants with such impairments, such a decision is within her discretion, if only because no one would have standing to challenge it.[27]  It is quite another thing to deny disability claims without consideration of the individual's vocational characteristics or his ability to return to his past work, when the statute defines disability so as to require consideration of such factors.  The Secretary cannot point to a practice which is judicially unreviewable to prove the validity of a practice which is reviewable.

The Secretary further argues that the validity of the severity regulation is supported by the legislative history accompanying the 1967 enactment of the statute's current definition of disability.  The Secretary argues that the 1967 revisions were prompted by Congress' desire to make medical considerations paramount in disability determinations, and that the severity regulation carries out this intent by requiring an initial evaluation of severity to be based solely on the medical evidence. This argument, however, rests on an incomplete picture of Congress' purpose in enacting the 1967 legislation.  Although the 1967 amendments were clearly intended to limit the statute's definition of disability, the House and Senate reports indicate that Congress was primarily concerned with matters other than the questions presented by this action.  Congress was reacting in particular to judicial decisions which had

---

**24.** *See* Background Material and Data on Major Programs Within the Jurisdiction of the Committee on Ways and Means, W.M.C.P. 98–2, Committee on Ways & Means, United States House of Representatives, 98th Cong., 1st Sess. at 79 (1983).

**25.** 45 Fed.Reg. 55574 (1980).

**26.** *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

**27.** Of course, Congress can correct administrative rule-making which it may consider more "generous" than the statute warrants by revising the underlying statute; however, since the disability benefits system is (theoretically, at least) not an adversary process, no one has standing to challenge a grant of benefits by the Secretary in an individual case.

interpreted the statute to permit benefits to be awarded to people who were actually working.[28] The amendments were also intended to overrule decisions which had held that a claimant's disability or non-disability had to be evaluated in terms of the actual jobs available within a narrow geographic area, rather than in terms of jobs generally available within the national economy. In addition, the amendments expressly required that claims of disability be supported by objective medical findings, rather than solely on a subjective claim of disability.[29]

The item of legislative history upon which the Secretary primarily relies as supporting her severity regulation is a passage from the report of the Senate Committee on Finance, which stated that the amendments

"would provide that such an individual would be disabled only if it is shown that he has a severe medically determinable physical or mental impairment or impairments; that if, despite his impairment or impairments, an individual still can do his previous work, he is not under a disability; and that if, considering the severity of his impairment together with his age, education, and experience, he has the ability to engage in some other type of substantial gainful work that exists in the national economy even though he can no longer do his previous work, he also is not under a disability...." [30]

The Secretary contends that this passage reflects the Committee's view that, under the new definition of disability, the claimant's ability to perform previous work and his age, education and work experience would be considered only if the impairment is first found to be severe.

The problem with this argument is that Congress simply did not write the statute that way. The statute expressly defines severity in terms of the effect of an impairment on the claimant's ability to perform his prior work or other work available in the national economy, in light of the claim-

ant's age, education and work experience. In any event, the passage relied upon by the Secretary is somewhat ambiguous; it can be read simply as an explanation of the overall circumstances under which a finding of disability or non-disability will be made, rather than as a fixed sequence of screening steps under which a "severity" test is somehow a condition precedent to any consideration of the claimant's ability to engage in his prior work or of the other vocational factors.

Furthermore, the Secretary's discussion of Congress' intent ignores the fact that when Congress decided, in another part of the statute, to permit the denial of benefits for certain claimants based on the level of severity alone without individualized consideration of vocational characteristics, Congress unambiguously expressed that intent. The definition of disability for widows' and widowers' benefits reads:

"A widow, surviving divorced wife, or widower shall not be determined to be under a disability (for purposes of section 402(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity."

42 U.S.C. § 423(d)(2)(B). The contrast between this definition and that of section 423(d)(2)(A) (applicable to insured workers) provides strong support for plaintiffs' argument that Congress intended the latter group of claimants to be evaluated in terms of the combined effect of the severity of their impairments and their individual vocational characteristics.

Finally, it must be noted that the severity regulation is in conflict with longstanding judicial interpretations of the burden of proof which claimants must satisfy in order to establish a prima facie case of disability. Under these precedents, which the Secretary does not challenge, "[a] prima facie

---

**28.** *See* S.Rep. No. 744, 90th Cong., 1st Sess. at 48 (1967), *reprinted in* 1967 U.S.Code Cong. & Ad. News, 2834, 2882.

**29.** *Id.* at 2882–83.

**30.** *Id.* at 2882.

case of disability is established when the claimant shows that he is unable to perform his past employment because of his impairments." *Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir.1983).[31] The burden then shifts to the Secretary to prove the existence of other substantial gainful work in the national economy which the claimant is capable of performing. *Id.*

Under the severity regulation, however, the Secretary simply disregards proof that the claimant cannot perform his prior work, if the claimant cannot first satisfy the severity test based on medical considerations alone. In plaintiff Joanne Lockett's case, for example, it is undisputed that she is unable to return to her prior work as a telephone company operator and supervisor because of the deterioration of her mental functions and capabilities. Nonetheless, the ALJ did not conduct a vocational analysis to determine whether she can perform other substantial gainful work, because he found that her impairment did not significantly limit her ability to perform basic work-related activities and therefore was not severe.[32] Indeed, it is not uncommon to see reported decisions in which the ALJ has carried out the full sequential evaluation, including the vocational analysis, and has found the claimant disabled, but the Appeals Council has nevertheless reversed on the basis that the claimant's impairment is not "severe".[33] The Secretary does not argue that this Circuit's precedents regarding the allocation of the burden of proof

are incorrect, but neither does she suggest how they can be reconciled with the severity regulation.

For all of the reasons discussed above— the conflict between the severity regulation and the plain language of the Act's definition of disability; the clear evidence that the regulation is not being applied as a *de minimis* standard as the Secretary claims; the fact that Congress expressly excluded consideration of vocational factors for widows' and widowers' benefits, but expressly included such factors in the statutory definition at issue here; and the inconsistency of the regulation with long-standing burden-of-proof rules, which Congress has never attempted to alter—we conclude that plaintiffs have established a probability of success on the merits as to their claim that the Secretary exceeded her statutory authority in establishing the severity regulation.[34]

We also note that plaintiffs, in addition to this showing, have submitted further evidence in the form of an affidavit by Marvin S. Lachman, Chief Social Services Disability Analyst in the Office of Disability Determinations ("ODD"), to support the contention that the Secretary, through internal administrative actions beginning in 1976, deliberately altered the substantive standards governing the circumstances under which claims could be denied on medical grounds alone, long before the new regulations were publicly proposed and

---

31. *Accord, Dousewicz v. Harris,* 646 F.2d 771, 772 (2d Cir.1981); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). These burden-of-proof rules are applied in other circuits as well. *See, e.g., Hall v. Secretary of HEW,* 602 F.2d 1372, 1375 (9th Cir.1979); *Hephner v. Mathews,* 574 F.2d 359, 361–62 (6th Cir.1978); *Small v. Califano,* 565 F.2d 797, 800 (1st Cir.1977).

32. It must be emphasized that although the severity regulation speaks of the claimant's ability to perform basic work-related activities, the Secretary does not consider the individual's particular vocational characteristics in making the severity assessment. Rather, the Secretary evaluates the medical evidence to determine whether the claimant's impairment imposes a significant limitation on his ability to perform activities such as walking, standing, sitting, lifting, follow-

ing instructions, relating to co-workers and supervisors, etc. *See* 20 C.F.R. 404.1521(b).

33. *E.g., Trafton v. Heckler,* 575 F.Supp. 742 (D.Me.1983); *Scruggs v. Schweiker,* 559 F.Supp. 100 (M.D.Tenn.1982).

34. Plaintiffs also contend that the severity regulation is unlawful because the Secretary violated the notice-and-comment procedures of the Administrative Procedure Act, 5 U.S.C. § 553, by failing to inform the public that the rule represented a major change in the substantive standards by which disability claims would be evaluated. In view of our conclusion that plaintiffs have demonstrated a probability of success on the other grounds set forth above, we need not address this claim at this time. We also need not address the constitutional issues raised by plaintiffs.

adopted, and indeed without having admitted to this day that the 1978 regulations represented a change in policy. We do not rely on this evidence, because the points previously discussed establish the likelihood of plaintiffs' success on the merits, and the Lachman affidavit raises issues that may require further factual development.[35] Nonetheless, it is worth noting that the affidavit presents strong evidence that the Secretary deliberately implemented a policy of requiring states (which bear the initial burden of making disability determinations) to reject greater and greater numbers of claims on medical grounds alone,[36] while simply refusing to acknowledge, either in 1976 when the policy emerged, in 1978 when the severity regulation was actually adopted through public rule-making, or at any time thereafter, that a policy change had taken place.[37]

### D. SSR 82-55

SSR 82-55 provides directions to SSA personnel on how to apply the Secretary's severity regulation. The ruling contains a list of 20 impairments that are to be considered per se non-severe. In addition, the ruling directs SSA adjudicators to evaluate the severity of a claimant's impairments singly, not in combination. Thus, if each of a claimant's impairments is deemed not severe standing alone, no consideration may be given to their combined effect on the claimant.

### 1. Standing

Before addressing the merits of plaintiffs' position as to this ruling, we must consider the plaintiffs' standing to challenge it, an issue raised by the Government. We believe plaintiffs have amply demonstrated standing to challenge the policies set forth in SSR 82-55. The Government argues that irrespective of SSR 82-55, the named plaintiffs' impairments were in fact considered in combination by the ALJs, and that therefore none of the plaintiffs have standing to challenge that aspect of SSR 82-55. However, as plaintiffs point out, there is no mention whatsoever of such consideration in the ALJs' decisions denying benefits to plaintiffs Dixon, Carrasquillo, Ramirez, Terez and Feliciano.[38] Thus, these plaintiffs clearly have standing to challenge the Secretary's policy of refusing to consider the combined effects of unrelated impairments. As to plaintiffs Casey and Gonzalez, although the ALJs did state in conclusory fashion that their impairments were not severe either singly or in combination, the opinions indicate that each impairment was evaluated individually and found not severe.[39] In view of the fact that SSR 82-55 contains a binding directive that the combined effect of non-severe impairments is not to be considered, we believe that, in order to establish that the ALJs ignored the ruling and gave full consideration to the combined effect of plaintiffs' impairments the Secretary must do

---

**35.** It is appropriate to note, however, that the affidavit submitted on behalf of the Secretary by Jean Hall Hinckley, Acting Deputy Associate Commissioner for Disability, presents little to counter the assertions of the Lachman affidavit. Although the Secretary was given, over plaintiffs' strenuous objections, approximately nine weeks to respond to the Lachman affidavit, the Hinckley affidavit offers little but speculation that the 1976 increase in returns of ODD disability determines may have been caused by factors other than a substantive policy change.

**36.** The procedures by which the Secretary is able to use her administrative oversight of state disability agencies to effect policy changes in the treatment of disability claims is described in the Lachman Affidavit and in *City of New York v. Heckler,* 578 F.Supp. 1109, 1113-14 (E.D.N.Y. 1984).

**37.** Although the Secretary's 1980 statement in the Federal Register as to the intent of the 1978 regulations, see discussion *supra,* might be seen as such an acknowledgement, the Secretary states that the statement should not be so interpreted.

**38.** The statements in those decisions that the claimants had no "impairment or impairments" that were severe, upon which the Government relies, certainly offer no basis for the conclusion that the combined effect of plaintiffs' impairments was considered.

**39.** The decision in plaintiff Lockett's case contains a similar statement, although there is no indication of whether the ALJ deemed Lockett to have several distinct neurological and psychological impairments, or just one impairment with several manifestations.

**1508**

more than point to such conclusory statements.

Moreover, several of the named plaintiffs suffer from impairments listed as *per se* non-severe conditions in SSR 82–55. Plaintiffs Dixon and Ramirez have suffered a loss of sight in one eye, a *per se* non-severe impairment under the ruling. Plaintiffs Carrasquillo, Terez and Casey suffer from arthritis, which is *per se* non-severe if there are "minimal abnormal findings on physical examination." Plaintiffs Carrasquillo, Casey and Gonzalez also suffer from hypertension, which is considered non-severe if it is not accompanied by end organ damage. In view of the ALJs' obligation to consider these impairments non-severe, the fact that the ALJs did not specifically mention SSR 82–55 in their decisions does not undermine these plaintiffs' standing to challenge the policy set forth in that ruling. In any event, the ALJ who ruled on Gonzalez' claim did refer to SSR 82–55 in his decision, and thus at the very least Gonzalez has standing to represent a class of claimants challenging this aspect of SSR 82–55.

### 2. The Merits

The Secretary's policy of refusing to consider the combined effects of impairments which are individually found not to be severe is manifestly irrational and finds no support either in logic or in the Social Security Act. SSR 82–55 contains the following explanation of the Secretary's policy:

> "Inasmuch as a nonsevere impairment is one which does not significantly limit basic work-related functions, neither will a combination of two or more such impairments significantly restrict the basic work-related functions needed to do most jobs."

In much the same way, a mathematician might prove that because two does not equal four, two plus two never equals four either.[40]

■ Clearly, in order to determine, as the Act requires, whether a claimant has an "impairment or impairments" of such severity that he cannot perform any "substantial gainful work," the Secretary must consider the total effect of an individual's impairments on his ability to perform gainful work.[41] Under the Secretary's policy, however, a claimant who suffers (for example) from all twenty *per se* non-severe impairments listed in SSR 82–55, and thus suffers from arthritis, loss of one eye, hypertension, obstructive airway disease, epilepsy, chronic liver disease, a peptic ulcer and diabetes, along with the twelve other listed impairments, is conclusively presumed not to meet the Secretary's severity threshold and thus is not disabled. If such a person is also 59 years old, illiterate, does not speak English, and has no work experience, such circumstances are simply irrelevant, because in the absence of a severe impairment the claimant's vocational factors will not be considered. Such a result clearly cannot have been contemplated by Congress when it drafted the definition of disability which appears in the Act. Accordingly, plaintiffs are plainly entitled to preliminary relief enjoining the Secretary from continued enforcement of her policy of disregarding the combined effects of non-severe impairments.

■ As to the Secretary's policy that a claimant will never be found disabled if his impairment is one of those listed in SSR 82–55, such a policy is unlawful for the same reason that the severity regulation is unlawful. The disability statute requires

---

**40.** The Secretary's reasoning might be defensible if a non-severe impairment were defined as one which places *no* limits on a claimant's ability to perform basic work-related activities. In that event, several "impairments" which place no limitation on a claimant's activity could be assumed to have no effect in combination as well. The severity regulation, however, defines a severe impairment as one which *significantly* limits work-related functions. Obviously, two impairments which individually do not place a

significant limitation on a claimant's work-related abilities, but which each places some limitation on his abilities, may in combination place a significant limitation on his abilities.

**41.** Decisions of this Circuit have held that the regulations require the ALJ to consider the combined effect of a claimant's impairments. *See Felshina v. Schweiker,* 707 F.2d 71, 73 (2d Cir. 1983); *Kolodnay v. Schweiker,* 680 F.2d 878, 879–80 (2d Cir.1982).

consideration of the combined effect of an individual's impairment and his age, education, work experience, and ability to return to prior work. The severity regulation is unlawful because it mandates the denial of claims without consideration of vocational factors. It follows that the use of a list of *per se* non-severe impairments to deny disability claims without evaluation of vocational factors is also unlawful.[42] Indeed, as plaintiffs point out, the use of such a list means that many claims will not even be evaluated in terms of the effect of the impairment on the claimant's ability to perform basic work-related functions, as the severity regulation itself requires. As one commentator has stated, the listed impairments "are not for the most part, examples of slight functional impairments at all but, rather, examples of medical conditions. Example 1(a) thus does not refer to whether or not the individual can bend, stoop, sit, etc., but, rather, to osteoarthritis with minimal abnormal findings." [43] This *per se* approach to disability evaluations is simply inconsistent with the Act.[44]

## E. Irreparable Harm

■ As discussed above the illegal denial of benefits to the plaintiffs in these cases is causing irreparable harm. David Dixon has not been able to work since 1974, and public assistance is his sole means of support. He has not bought new clothing for three years. Ricardo Ramirez has not worked since 1978 as a result of his disabilities, and the sole means of support for Ramirez, his wife, and their three small children, is $428 per month in public assistance and $120 per month in food stamps.

Their rent is $348 per month, and the family is behind in paying its rent and utilities, and goes without food at times. Joanne Lockett's sole source of income is her pension of $429.09 per month and she states that she owes approximately $700 in medical bills and fears that she will not be able to pay future medical expenses. The circumstances of the other named plaintiffs are similar. The harm that they are suffering on a day-to-day basis as a result of their desperate financial circumstances cannot be repaired by a retroactive award of benefits. Accordingly, the irreparable harm element of the test for preliminary relief is amply satisfied here.

## F.

In holding that plaintiffs have demonstrated a likelihood of success as to the invalidity of the severity regulation, we are aware that some courts outside this Circuit have construed the regulation narrowly so as to save it from a finding of invalidity. With respect to these courts, we believe the analysis in these opinions is incorrect and is likely to result only in continued confusion and endless appeals of decisions in which the Secretary's findings of non-severity is reversed for failure to follow the court's construction of the regulation. In *Brady v. Heckler*, 724 F.2d 914 (11th Cir.1984), the Eleventh Circuit rejected a challenge to the severity regulation, holding that the regulations enacted in 1978 (and slightly modified in 1980)

"were not meant to alter the level of severity for a finding of not disabled on the basis of medical considerations alone.

---

**42.** The Fourth Circuit has long held such a practice to be unlawful. *See Martin v. Secretary of Health, Education & Welfare*, 492 F.2d 905 (4th Cir.1974); *Hyatt v. Heckler*, 579 F.Supp. 985 (D.N.C.1984).

**43.** Goldhammer & Bloom, *Recent Changes in the Assessment of Pain in Disability Claims Before the Social Security Administration*, Social Security Reporting Service 306 (January 1984).

**44.** Plaintiffs also argue that SSR 82–55 is unlawful because it was not promulgated in accordance with the notice-and-comment procedures of the APA. The Secretary argues that SSR

82–55 is merely an interpretive rule and as such is not subject to the APA's notice-and-comment requirements. Although an agency's characterization of its own rules is entitled to deference, it is not necessarily dispositive in all circumstances. *See generally Cabais v. Egger*, 690 F.2d 234 (D.C.Cir.1983). We need not resolve this question here, however, since we find the policies set forth in SSR 82–55 to be invalid on other grounds. Regardless whether the ruling is subject to notice-and-comment requirements, the substantive policy set forth in the ruling may be enjoined if it is inconsistent with the statute.

Under the 1968 and 1978 regulations, an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."

*Id.*, at 920. Having interpreted the severity regulation in this *de minimis* fashion, the Court resoundingly reversed the ALJ's finding that the plaintiff's impairments were not severe, stating:

"an individual who suffers from pericarditis, hypoglycemia, vertebro vascular insufficiency, mental depression, and possible emphysema, is not suffering from a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of slight abnormalities."

*Id.* at 921.

Other courts have stopped short of ruling on the validity of the severity regulation itself, by simply announcing what they believe to be the correct manner of applying the regulation, and reversing the ALJ's decision for failing to apply the regulation correctly. For example, in *McCullough v. Heckler*, 583 F.Supp. 934 (N.D.Ill.,1984), the Court stated that the severity regulation

"should be employed only when a claim is so groundless that any analysis of the claimant's work experience or residual functional capacity would be a waste of time. Doubts should be resolved against resting any decision on 'severity' alone...."

*Id.* at 937–938. In *Hundreiser v. Heckler*, 83 Civ. 4360, slip op., (N.D.Ill. March 19, 1984), the Court announced a slightly different approach, ruling that disability claims cannot be denied merely on a finding of non-severity, if the claimant establishes that he is unable to return to his prior work:

"the claimant can ... rebut the Secretary's [finding of non-severity] by showing that his impairments prevent him from doing his past work. In other words, by making out a prima facie case of disability through showing an inability to do past work due to 'an impairment' the claimant necessarily satisfies the 'severe' impairment requirement of 20 C.F.R. § 404.1520(c)."

*Id.* at pp. 23–24.[45]

The common conclusion of these opinions, all of which have been handed down in individual disability appeals, is that the problem lies not in the severity regulation itself, but in the improper application of the regulation by SSA personnel. In none of these cases, however, was the court's attention directed to SSR 82–55—which makes clear the fact that SSA personnel are not permitted to apply the severity regulation merely as a *de minimis* standard—or to the statistical evidence illustrating the dramatic rise in the percentage of cases denied on medical grounds alone since the enactment of the severity regulation.

As our analysis on the merits indicates, the problem lies not in the proper application of the severity regulation, but instead in the conflict between that regulation and the statutory definition of disability. Neither sound policy nor appropriate respect for Congress' goal of establishing a functioning system of benefits administration is properly served by endless case-by-case reversals of ALJs' decisions, in which the judiciary plays the role of Cuchulain battling the invulnerable tide. Because the severity regulation, and the policies set forth in SSR 82–55, conflict with the Social Security Act, they are invalid.

### III. Class Certification

Plaintiffs move pursuant to Fed.R.Civ.P. 23(a) and 23(b)(2) for certification of a class consisting of

---

**45.** *See also Wallschlaeger v. Schweiker*, 705 F.2d 191 (7th Cir.1983) (treating the definition of severity in the regulations as an essentially tautological one, in order to reconcile the regulation with the statutory definition of disability); *Scruggs v. Schweiker*, 559 F.Supp. 100 (M.D. Tenn.1982) (announcing that in future Social Security appeals where the ALJ's analysis ended with the application of the severity test, the Court would apply a set of presumptions to supply the missing fact-findings under the remainder of the sequential evaluation).

"All persons in the State of New York· who have filed or will file applications for disability benefits under Title II and/or Title XVI of the Social Security Act, and whose benefits have been or will be denied pursuant to the policies set forth in 20 C.F.R. §§ 404.1520(c) and .1521, 416.-920(c) and .921 (1982), and Social Security Rulings cum. ed. 82–55 (1982); and all recipients of such benefits who have made or will make claims for continued benefits (through participation in a Continuing Disability Interview), and whose benefits have been or will be terminated pursuant to the same policies."

The Secretary raises several objections to certification of the class as so defined. She contends that the class is overly broad because it includes individuals who (1) received final decisions from the Secretary more than 60 days prior to the filing of the complaint in the instant action and who have not filed claims in federal court, and thus have failed to meet the 60–day filing deadline required by sections 405(g) and 1383(c)(3); (2) have not fully exhausted their administrative remedies as required by sections 405(g) and 1383(c)(3); and (3) have not yet filed claims for .benefits or had their benefits terminated, and thus have not satisfied the presentment requirement of sections 405(g) and 1383(c)(3).[46]

The exhaustion requirement has already been discussed above, in section II. A. of this Memorandum, and we have concluded that the requirement is waived in this case on account of the irreparable harm being suffered by claimants who are unlawfully denied benefits. The questions that remain to be resolved are whether the class may include those individuals who received final decisions more than 60 days prior to the filing of the original complaint in this action, and whether class certification may extend to future applicants for benefits.

Ordinarily, a claimant who has received a final decision by the Secretary denying ben-efits must file a complaint in federal court within 60 days of the denial or his claim will be time-barred. However, the 60-day requirement constitutes a statute of limitations and not a jurisdictional bar, and some courts have held it to be inapplicable in cases such as this, which involve system-wide challenges to the Secretary's regulations rather than individual claims for benefits. *See Lopez v. Heckler,* 725 F.2d 1489, 1505–07 (9th Cir.1984); *City of New York v. Heckler, supra,* 578 F.Supp. at 1124.

The plaintiffs suggest that, since preliminary relief is being sought only by those class members who satisfy the 60-day requirement, the Court may certify a conditional class limited to those individuals, and reserve decision on the ultimate scope of the class until a final judgment is entered. Such a step appears appropriate, in view of the fact that the question whether the 60-day requirement may be waived in cases such as this is currently before the Court of Appeals as part of the appeal of *City of New York v. Heckler, supra.*

The only remaining question, therefore, is whether the class may be defined so as to include future claimants whose applications for benefits will be denied or terminated as a result of the severity regulation and/or SSR 82–55. The Secretary argues that the class cannot include future claimants because such individuals have not yet presented any claim to the Secretary and thus have not satisfied the unwaivable presentment requirement of section 405(g) of the Act.[47] Plaintiffs argue that defining the class to include future claimants is simply intended to assure that the legality of the Secretary's policies need not be litigated over and over again as new claimants apply for benefits. They point out that classes challenging governmental action routinely include future members of the class. *E.g., Brown v. Board of Education,* 84 F.R.D. 383 (D.Kan.1979).

---

**46.** The Secretary's argument that none of the named plaintiffs have standing to challenge SSR 82–55 has already been discussed and rejected in section II. D. 1. of this memorandum.

**47.** See section II. A. of this memorandum, *supra.*

The plaintiffs' argument is persuasive. The inclusion of future members of the class in the class definition creates no jurisdictional problem under section 405(g), because such individuals will not actually be covered by any order or judgment entered in these cases until they do make a claim for benefits in some form, thus satisfying the presentment requirement.

There is no dispute as to the remaining requirements for class certification. The proposed class clearly meets the numerosity, commonality, typicality, and fair representation requirement of Fed.R.Civ.P. 23(a).[48] In addition, the class satisfies the requirement of Rule 23(b)(2), which permits certification where

> "the party opposing the class has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Accordingly, the motion for class certification is granted, with the proviso that the class presently include only those members who satisfy the 60-day filing requirement of section 405(g) of the Act.

\* \* \*

The motion for a preliminary injunction is granted. The motion for class certification is granted to the extent indicated in this opinion.

Settle order on notice.

---

48.  *See* Affidavit of Nancy Morawetz, dated January 26, 1984.