**Leon E. BURNETTE, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Nos. 84 C 0587, 87 C 2838.**

United States District Court, E.D. New York.

Dec. 20, 1988.

Brooklyn Legal Services Corp., Federal Litigation Program (Minna J. Kotkin, Harvey Mechanic and Lisa Newmark, Legal Interns, of counsel), Brooklyn, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y. (M. Lawrence Noyer, Jr., Asst. U.S. Atty., of counsel), for defendant.

NICKERSON, District Judge.

■ This case is about plaintiff Leon E. Burnette, an offset printing press operator for twenty-four years who, in the opinion of his treating doctor, became totally disabled primarily due to diabetic neuropathy. Disregarding both the opinion of the government consulting doctor examining Mr. Burnette that he had a loss of feeling in his hands and feet and the opinion of the treating physician that if Mr. Burnette "operates machinery he may get his hands caught and be pulled into the mechanism," the defendant Secretary of Health and Human Services concluded that Mr. Burnette was not disabled and could return to his job as an offset printing press operator.

As will appear, there is no substantial evidence to support the Secretary's conclusion. Sadly, this decision does not represent an isolated aberration by the Secretary. For some time this court has been concerned about the apparent unfairness of the Secretary in assessing claims for disability. Mr. Burnette's case is only one of what the court regards as a long series of shocking injustices perpetrated by the Secretary on applicants for benefits. Case after case appearing before the court reveals a determined predisposition on the part of the Secretary and his agents to decide that claimants are not disabled without any substantial evidence to support the decisions.

Persons who claim social security benefits are entitled to a fair and objective analysis of the evidence in the record. Congress has required that the decisions of the Secretary be based on substantial evidence. It is clear that for the last several years many claimants have not been treated fairly or objectively. The instances are so numerous as to call into question the intellectual integrity of the administration of the entire program.

Plaintiff brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) (1982) to review a final determination of the Secretary denying plaintiff's application for disability insurance benefits and Supplemental Security Income.

The United States Attorney filed a brief supporting the motion to affirm. However, at oral argument the Assistant United States Attorney said that the government would not be adverse to remanding the case based on new evidence not before the Administrative Law Judge or the Appeals Council.

Plaintiff filed his application for benefits on March 4, 1983. More than eight months later, Administrative Law Judge (ALJ) Norman Silverman found plaintiff not under a disability. The Appeals Council denied review on January 27, 1984.

Plaintiff brought action here. The parties then stipulated to a remand which the court ordered on March 14, 1985, based upon *Dixon v. Heckler,* 589 F.Supp. 1494 (S.D.N.Y.1984). It took the Appeals Council more than a month to refer the case to an ALJ for further action.

Almost seven months later, ALJ Silverman held a further hearing. He decided for plaintiff, finding that he had a combination of severe impairments, including diabetes mellitus with peripheral neuropathy, benign prostate enlargement, and degenerative arthritis of the lumbar spine, and that his complaint of significantly reduced functional capacity, weakness, and numbness was valid and credible. The ALJ determined that plaintiff could perform work "except for standing and/or walking one—two hours and lifting and/or carrying five pounds during an eight-hour workday," and that he was "precluded from performing work requiring fine manipulative ability." The ALJ concluded that plaintiff was unable to perform his past relevant work as an offset printing press operator, and

that his capacity for a full range of sedentary work was reduced by his lack of manipulative ability due to diabetic neuopathy. ALJ Silverman therefore found that plaintiff had been under a disability since August 9, 1982.

■ On April 11, 1986, the Appeals Council, not satisfied with this decision, remanded the case once again to obtain "additional evidence." The Appeals Council based its remand primarily on the testimony of Dr. Charles Plotz given at the initial 1983 hearing, which led to the decision reversed by this Court. Dr. Plotz, not a neurologist but a practitioner of internal medicine, had testified as a medical advisor. Although he had never examined plaintiff, he testified that plaintiff's primary impairment was "mild diabetes mellitus with some degree of peripheral neuropathy" and with very little in the way of neurologic changes to indicate a "very severe impairment."

The Appeals Council, noting that the only medical evidence subsequent to Dr. Plotz's testimony consisted of a report by plaintiff's treating physician, Dr. J.M. Subudhi, cast doubt on that opinion because it did not state that plaintiff's impairments were of greater severity during the period covered by the medical advisor's testimony and did not adequately describe plaintiff's condition during the entire period of treatment.

The Appeals Council directed the ALJ to obtain a consultative neurological examination and a medical assessment of plaintiff's ability to perform basic work-related activities.

ALJ Silverman then held a further hearing on December 22, 1986, three years, nine months, and eighteen days after plaintiff filed for benefits. Dr. Plotz again testified, although he had not examined plaintiff in the interim. This time ALJ Silverman reversed himself, finding that plaintiff's allegations of severe, disabling pain and significantly reduced functional capacity were not credible. The ALJ concluded that plaintiff could do his past relevant work as an assistant offset press operator and was not under a disability. The Appeals Council was satisfied with this decision and adopted the ALJ's findings and conclusions on July 23, 1987.

Prior to the last hearing, two consultants had examined plaintiff. Dr. Irwin Miller, whose specialty is not indicated in the record, reported on July 10, 1986 that plaintiff had a history of diabetes and "says he has had diabetic neuropathy for a considerable period of time." He complained of pain in the lower portion of his back radiating down his right leg and of numbness in both feet making it very difficult for him to move around. He stood and walked in a guarded fashion. The doctor noted that although plaintiff apparently voluntarily guarded the motion of his lower back, his lumbar spine reversed on even limited forward flexion. The straight-leg raising tests were bilaterally negative, and knee and ankle reflexes bilaterally hypoactive. The thighs and calves were equal in circumference. There was a stocking type of anesthesia encompassing the right lower extremity from the inguinal region on down. There was anesthesia of both feet, commencing at the ankle on the left side. X-rays of the lumbar spine revealed a minimal amount of osteoarthritis on the anterior aspect of L3 and L4 without significant hypertrophic changes in the posterior portion of the vertebral bodies. The disc spaces were well maintained, and there was normal lordosis.

Dr. Miller concluded that plaintiff presented a picture of diabetes and a mild lumbar spondylosis but also a picture "which does not conform to a specific anatomic pattern as far as I can discern at this time."

Dr. Miller filled in a form assessing plaintiff's ability to do work-related activities. Although plaintiff's lifting and carrying were affected by the impairment "due to restricted motion and possible diabetic neuropathy," he could lift and carry up to 25 pounds. He could never climb, balance, stoop, crouch, kneel or crawl.

Dr. David F. Cohen, a neurosurgeon, examined plaintiff on June 17, 1986. He described plaintiff as "not a very good historian," who "appears to have had a diagno-

sis of diabetes made about six years ago." Dr. Cohen found plaintiff normotensive. There was no motor weakness in the upper or lower extremities, but deep tendon reflexes were depressed, indeed absent without reinforcement, in all four extremities. Plaintiff has "a loss of sensory appreciation to pin and position up to about four inches above the wrist and about five inches above the ankle in all four limbs." He was able to walk on his heels and toes. He had mild limitation of back motion consistent with his age. Dr. Cohen concluded that plaintiff's was a "classic case of diabetic neuropathy."

Dr. Cohen also found that plaintiff could not climb, balance, stoop, crouch, kneel or crawl. He marked both "no" and "yes" on the form asking whether the physical function of "feeling" was affected by the impairment.

Dr. Subudhi, plaintiff's treating physician since 1983, made one report dated October 3, 1985. He stated that plaintiff, whom he saw on a bi-weekly basis, had a history of at least three years of diabetes mellitus and diabetic neuropathy. Plaintiff's peripheral neuropathy was of the glove and stocking type. The doctor wrote that plaintiff could not return to his past work or any work where he had to handle machinery, and that due to diabetic neuropathy he was unable to perform sedentary work. The doctor's opinion was as follows: "The diabetic neuropathy causes loss of feeling and fine tremors in my patient's hands; therefore, he is incapable of fine manipulations with his hands. If he operates machinery he may get his hands caught and be pulled into the mechanism." The doctor concluded that plaintiff was incapable of performing the full range of sedentary or light work, and that his capacity to lift a weight of 20 pounds as well as his capacity to stoop was limited.

The doctor's opinion as to plaintiff's hands was supported by plaintiff's testimony that he could not use a can opener due to the numbness in his hands and therefore bought no canned food but only frozen food.

In a further report dated October 10, 1986 Dr. Subudhi stated that plaintiff's overall condition had deteriorated. In particular he stated that the following conditions had worsened: diabetic neuropathy, sensory neuropathy, anesthesia of lower extremities, anesthesia of hands, fine manipulative dexterity, and back pain.

Although the Administrative Law Judge and the Appeals Council relied heavily on the testimony of Dr. Plotz, the medical advisor, he had never examined plaintiff. When faced with the opinion of both Dr. Cohen and Dr. Miller, the government's consultants, that plaintiff could not climb, stoop, balance, crouch, kneel, or crawl, Dr. Plotz said "my guess is that they probably misinterpreted the question because it doesn't make sense otherwise." When asked about Dr. Cohen's finding that plaintiff did not feel pins in his feet or in his hands, Dr. Plotz said that plaintiff "has no problem feeling something" and "there is no problem of sense of feeling," but the "problem is that he has bizarre feelings, not lack of feelings." The reports of a nonexamining physician deserve little, if any, weight in the overall evaluation of disability. Dr. Plotz's testimony certainly does not constitute substantial evidence overriding a treating physician's diagnosis.

There is nothing in the reports of the examining consulting physicians to refute the opinion of the treating physician, Dr. Subudhi, that the loss of feeling caused by the diabetic neuropathy was such that if plaintiff operated machinery "he may get his hands caught and be pulled into the mechanism."

The decision of the Secretary is therefore reversed and the case remanded for calculation of benefits.

So ordered.