**Beatrice SCRUGGS**

v.

**Richard SCHWEIKER, Secretary Health and Human Services.**

**No. 80–3041.**

United States District Court,
M.D. Tennessee,
Nashville Division.

April 28, 1982.

David Ettinger, Legal Services of Middle Tenn., Gallatin, Tenn., for plaintiff.

Hal Hardin, U.S. Atty., Nashville, Tenn., Robert Washko, Asst. U.S. Atty., for defendant.

## MEMORANDUM

MORTON, Chief Judge.

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Secretary of Health and Human Services denying plaintiff a period of disability, disability insurance benefits and supplemental security income benefits as provided by Titles II and XVI of the Social Security Act, as amended. 42 U.S.C. §§ 416(i), 423(d) and 1382c(a)(3).

These claims have had a long and tortuous course through the processes available for determining the disability issue.

Plaintiff filed her applications for both Title II and XVI benefits on November 16, 1978. (tr. 63, 73). On her Title II application, she alleged that she had been disabled as of August 1978 because of her back. (tr. 63). After initial and reconsideration denials, the plaintiff was afforded a hearing on May 9, 1979, before Administrative Law Judge [ALJ] Robert C. Laws. Plaintiff was not represented at the hearing, and proceeded with the hearing. On June 26, 1979, the ALJ issued his denial decision (tr. 25–35) finding that the plaintiff retained the capacity to perform light work as defined in the regulations and that her previous employment was light work. From the discussion of the evidence, it is apparent that the ALJ placed great weight on the opinion of a treating physician who stated that plaintiff could perform light work. (tr. 31). In August 1979 the plaintiff obtained the assistance of the Legal Services of Middle Tennessee to assist her, and after considering additional evidence and arguments advanced by her counsel, the Appeals Council [AC] on November 20, 1979, concluded that there was no basis for changing the ALJ's conclusion and so notified the plaintiff. (tr. 4, 5). Thereafter this civil action was timely filed, and the Court therefore has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3).

On July 15, 1980, this Court entered an order remanding the claim for the purpose of holding a supplemental hearing at which both parties could submit additional proofs. Specifically, the Court found that it would be manifestly unfair to consider the claim in its state at that time inasmuch as the plaintiff's treating physician stated in an affidavit that he misunderstood the definition of light work when he gave his opinion which was relied on by the ALJ, and that had he known the definitions of light and sedentary work as contained in the regulations, he would have stated that the plaintiff was capable of performing only sedentary work. On August 18, 1980, the AC remanded the claim to a different ALJ for the purpose of holding a supplemental hearing. The ALJ was instructed to take such further action which might have been necessary to complete the administrative record and as required by this Court's order. (tr. 178). Although the claim was remanded to the ALJ in August of 1980, it was not until April 6, 1981, that a supplemental hearing was held.[1] The plaintiff was represented at the hearing and she appeared and testified, as did two of her daughters, and a neighbor. Also testifying was a vocational expert.

On June 30, 1981, the ALJ issued his recommended decision favorable to the plaintiff, finding that she was disabled within the meaning of the Act and recommending that she be awarded a period of

---

1. Plaintiff and her attorney encountered difficulties which hopefully will not recur with other claims which may be remanded by this Court. (See tr. 288–300).

disability and benefits as provided in Title II and benefits as provided in Title XVI. (tr. 162–171). Specifically the ALJ found that plaintiff's impairments prevented her from performing all but sedentary work, that she, therefore, could not return to her previous occupation during the effective periods covered by the applications, and that her previous employment left her with no skills which are transferable. (tr. 171). Relying upon the conclusive effect of Rule 201.10, which was applicable based on her vocational factors, he found the plaintiff was disabled. (tr. 171).

On January 26, 1982, the AC declined to accept the ALJ's recommended decision and after its own review of the record, concluded that in the sequential evaluation of these claims, as provided in the regulations (see 20 C.F.R. §§ 404.1520 and 416.920), that the record established plaintiff's impairment or impairments were not severe. Therefore, the AC determined she could not be found disabled. (tr. 153–155). On March 1, 1982, this civil action was reopened upon the filing by the defendant of the supplemental transcript. The case now pends on cross-motions for summary judgment.

As a preliminary matter, the Court finds against the plaintiff on the argument that the remand order issued by the Court on July 15, 1980, restricted the issues to be decided to only the question of transferability of skills. The Order and Memorandum do not specify that as the sole issue on remand. It was the full intent of the Court that both parties as stated could produce evidence at the supplemental hearing and that it was the intent of the Court that all issues, including an entire reconsideration of the claim, could be made. The affidavit of Dr. B.N. Lakshmikanth, if accepted, established that the plaintiff made out a *prima facie* case. Under the circumstances, the Court's intent was that the issue of exactly what Dr. Lakshmikanth actually believed as to the definitions of exertional levels of work at the time he rendered his report could be investigated.

In like manner, inasmuch as there was no physician who said that plaintiff was totally disabled, the Court fully intended that all issues remained open at the supplemental hearing.

At any rate, the Court finds that there was no error on the part of the AC for evaluating the claim as was done.

The question remains whether there is substantial evidence in support of the conclusion of the AC; that is, whether there is substantial evidence to support the finding that the plaintiff's impairment or impairments were not severe as that phrase is defined in the regulations.

■ This Court is limited to review of the Secretary's decision and the record made in the administrative hearing process. The determination of disability under the Act is an administrative decision, and the only question before the Court is whether or not the decision of the Secretary is, in fact, supported by substantial evidence. Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. It is more than a scintilla. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *LeMaster v. Weinberger,* 533 F.2d 337 (6th Cir.1976).

The statutory requirements for establishing disability are similar in both Title II and Title XVI of the Act. 42 U.S.C. §§ 423(d) and 1382c(a)(3). The regulatory provisions for both Title II and Title XVI determinations are likewise similar. 20 C.F.R. §§ 404.1501, *et seq.,* and 20 C.F.R. §§ 416.901, *et seq.* Therefore, the substantial evidence question for both claims may be considered together. 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court will cite the statute or regulation applicable to the Title II claim only.

■ The plaintiff would be considered disabled if she were unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to last at least 12 months. Substantial gainful activity not only includes previous work performed by the plaintiff, but also, considering her age,

education and work experience, any other work which exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the plaintiff lives, or whether a specific job vacancy exists or whether the plaintiff would be hired if she applied. The burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. Plaintiff must establish that she not only has an impairment as defined but that such impairment was severe enough to preclude her engaging in any substantial gainful activity. *Ragan v. Finch,* 435 F.2d 239 (6th Cir. 1970).

Title 20 C.F.R. § 404.1520, does allow for the ALJ, or the AC, to consider a disability claim sequentially in these steps:

(1) whether the claimant is working at substantial gainful activity and then, if he is not working,

(2) whether the claimant has a severe impairment, and if he does

(3) whether the claimant has an impairment which is listed in the Appendix 1 to the regulations, and if not, then

(4) whether the claimant has an impairment which prevents past relevant work, and if he does not, then

(5) whether claimant has an impairment which prevents him performing any other work.

This same regulation provides that if at any of these steps, excluding step (3) a finding of not disabled can be made, that such a finding terminates the sequential consideration. 20 C.F.R. § 404.1520(d). A finding that an impairment is listed, or the medical equivalent of a listed impairment, results in a disability finding at step (3). 20 C.F.R. § 404.1520(e).

In this case the AC arrived at step (2), as outlined above [actually step (2) is 20 C.F.R. § 404.1520(c)], and found plaintiff did not have a severe impairment, and thus was not disabled. The AC terminated further consideration of the claim. One may infer that the AC concluded plaintiff could return to her previous jobs, which were coil winder, cementer in the footwear manufacturing industry, and inspector in the garment manufacturing industry. But this inference in all cases may be unfair. For example, a less than severe hearing loss to an individual may prevent that individual from continuing in his present occupation requiring better hearing than the individual retains. In another example, an individual who has worked at heavy work may be restricted from continuing in heavy lifting by a less than severe muscular strain, or by some other non-severe health problem. Undoubtedly, many other examples could be conceived. Termination of sequential consideration at step (2) leaves the reviewing court with a record which is lacking a definitive finding on the issue of what job the individual can do unless it may be inferred that an individual without a severe impairment may perform at any job at any level of physical activity. This, of course, is absurd.

Furthermore, the Act does not speak of a non-severe impairment, by definition or otherwise. The Act provides for consideration of clinically established impairments in relation to the individual's ability to perform a job. Section 423(d) does contain the word "severity," but in the context of determining whether the individual's impairments "are of such severity that he is not only unable to do his previous work but cannot, considering [vocational factors] engage in any other kind of [work]." 42 U.S.C. § 423(d)(2)(A). Elsewhere, it is provided that impairments must be demonstrated by "clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Thus, it appears Congress fully intended that the severity of clinically established impairments be considered in relation to the vocational prospects of the individual. A non-severe finding, with nothing more, does not comply with this statutory requirement. In this case, the action of the AC is particularly confounding in light of the fact that the ALJ found that plaintiff could not return to work at any of her past jobs or at any other job.

The practice as presently provided for in § 404.1520 has been criticized, and the Secretary has stated this practice is under consideration for revision. *See, Lofton v. Schweiker,* 653 F.2d 215 (5th Cir.1981). Hopefully, the revision is soon to occur.

■ Prior to any revision, this Court shall adopt the following rule to be applicable to those claims presented for review where the sequence terminated at step (2). The Court will assume that had the sequential consideration continued, the finder of fact would have found that the impairments were neither listed nor prevented the individual from returning to previous work. This rule will prevent needless and time consuming remands just to allow the Secretary to continue the sequence beyond step (2), and will afford the Court a record which contains the minimum findings necessary for a review on the statutory requirements.

A non-severe impairment is defined in § 404.1521(a) as an impairment which "does not significantly limit ... physical or mental abilities to do basic work activities." And basic work activities are defined in § 404.1521(b) as "abilities and aptitudes necessary to do most jobs." Apparently, recognizing that abilities and aptitudes necessary to do most jobs would be of little guidance, thankfully the Secretary set out some examples:

(1) physical ability to walk, stand, sit, lift, push, pull, reach, carry, or otherwise handle something;

(2) capacity to be able to see, hear, and speak;

(3) mental ability to understand, remember and follow instructions;

(4) ability to make judgments;

(5) ability to respond appropriately to a work setting, and to co-workers and supervisors; and

(6) ability to deal with changes at a routine work setting.

The regulation does not say that this list is all-inclusive, but it is difficult to imagine what may have been left off the list, save for the possible exception of eye-hand coordination and, perhaps, finger dexterity, though both of these are easily inferable from those activities listed.

■ The Court has carefully reviewed this entire record. The AC's finding that plaintiff's impairments are non-severe is not supported by substantial evidence.

The AC based this finding primarily on the report of a consulting neurosurgeon, Dr. Warren McPherson, who examined plaintiff at the request of the Disability Determinations Section [DDS] on or about May 7, 1981, and who rendered this brief report:

I saw Mrs. Scruggs in the office recently at the request of the Disability Determinations Section. As you know, Mrs. Scruggs is a 52 year old lady who says she's had a long history of back pain. She was operated on in October of 1978 for left leg pain. She says that she still has some leg pain, but it is not a great problem. Her basic problem is back pain. On physical examination, her motor, reflex, and sensory function is normal. She has a negative straight leg raising test. In essence, this lady has no sign of any neurologic abnormalities. She may have some muscle pain, but this should respond to an exercise program. I will fill in your form. (tr. 301). [Copied as appears.]

After performing motor, sensory, reflex and straight leg test, Dr. McPherson then completed the Physical Capacities Evaluation Form. On this form it is significant that this physician passed over the box to be checked "if the medical findings show no significant physical impairment." (tr. 302). Other significant limitations found by Dr. McPherson, based on medical findings alone, are: plaintiff can only occasionally lift 20 pounds, but can frequently lift 10 pounds; she can walk for only 4 hours, stand only 4, and sit for 4 hours per day; she should only bend occasionally, but can reach frequently; however, according to Dr. McPherson, plaintiff's legs are restricted from use in work activity. (tr. 302).

Thus, comparing the physical abilities as indicated by Dr. McPherson, it appears he thinks plaintiff is significantly limited.

Ability to lift and carry only 10 pounds on a frequent basis, coupled with the inability to use either leg in work activity, plus the other limitations listed above by Dr. McPherson, are the same as a significant limitation on one's physical "abilities ... to do most jobs."

Dr. McPherson's report is no evidence at all that plaintiff's impairment is not severe. To the contrary, the evidence establishes a severe impairment. The AC's characterization of the findings check-marked by Dr. McPherson as showing "no significant restrictions ..." (tr. 154) is just not acceptable.

In addition, the remainder of the medical proofs establish that plaintiff is significantly limited in both physical and mental abilities for doing basic work related activities. Dr. Lakshmikanth found diminished reflexes, muscle spasms, and positive straight leg raises. (tr. 266). He thinks she is restricted to no more than sedentary work. (tr. 264).

Dr. Kenneth Anchor, a clinical psychologist, conducted eleven different work and psychological types of tests. He found some restrictions on plaintiff's aptitudes. He thought she was a person who would fatigue easily, worried a great deal, and would require structured directions and reminders to complete an assigned task. (tr. 268). Thus, plaintiff, in addition to physical restrictions, is also left with some restrictions from her mental abilities. In addition, Dr. Anchor concluded plaintiff has skills transferable to light work, but not to sedentary work. (tr. 268).

Having carefully reviewed this record, the Court concludes that the evidence in support of a non-severe finding is less than substantial.

The assumed finding that plaintiff can return to her previous work likewise is unsupported by any evidence.

Plaintiff's previous work was at least light work. Her testimony at the prior hearing establishes this finding. (tr. 49, 50). These prior jobs were performed while standing which coupled with the maximums listed brought this work within the meaning of light work.

All of the medical evidence of record establishes that plaintiff can perform only sedentary work. Dr. Lakshmikanth so stated and taking all of what Dr. McPherson has checkmarked, he clearly is of record that plaintiff cannot stand and work. Thus, there is no physician who has stated plaintiff can do more than sedentary activity on a sustained basis.

On the other hand, the finding by the ALJ that plaintiff can perform only sedentary work and has no skills which are transferable is also supported by substantial evidence. This being so and the plaintiff's vocational factors being established beyond any doubt, the application of Rule 201.10 to the facts of this case is a foregone conclusion with a result being a finding of "disabled." The record fully supports this result.

The Secretary's finding lacks the required substantial evidence support and is reversed.

An appropriate Order will be entered.