**Robert MOODY, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 84–2320.**

United States District Court, C.D. Illinois, Danville Division.

June 24, 1985.

Diane M. Sauer, Land of Lincoln Legal Assistance Foundation, Champaign, Ill., for plaintiff.

Paul L. Kanter, Asst. U.S. Atty., Danville, Ill., for defendant.

## ORDER

BAKER, Chief Judge.

The plaintiff, Robert Moody, submitted this action pursuant to 42 U.S.C. § 1383(c)(3) seeking judicial review of the final decision of the Secretary of Health and Human Services (Secretary) denying his application for Supplemental Security Income benefits. The Secretary has filed a cross motion for an order affirming her final decision.

### I.

The plaintiff submitted an application for Supplemental Security Income benefits on April 12, 1982, in which he alleged "mental problems" as his disabling impairment. (Transcript 144–153.) His initial application was denied on July 8, 1982. (Tr. 164–66.) The plaintiff's request for reconsideration (tr. 167) was denied on October 15, 1982. (Tr. 168–169.) The plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 226.) A hearing was held on July 29, 1983 (tr. 89–143), and the ALJ subsequently ruled on November 7, 1983, that the plaintiff was not under a disability within the scope of the Social Security Act. (Tr. 75–82.) On April 23, 1984, the Appeals Council denied the plaintiff's request for review of the ALJ's decision. (Tr. 66–67.) The plaintiff then filed a request to reopen the decision for the consideration of further evidence. (Tr. 5–65.) Upon consideration of the additional evidence, the Appeals Council again affirmed the ALJ's decision. (Tr. 4.) The plaintiff subsequently filed this action on August 15, 1984, seeking judicial review of the Secretary's final decision.

The plaintiff raises three grounds in support of his motion for reversal of the Secretary's final decision. First, the plaintiff claims that the Secretary's use of 20 C.F.R. § 416.920(c), the "severity step", was improper because it increases the initial burden on disability claimants in a manner inconsistent with the Social Security Act (the Act). Second, the plaintiff claims that the Secretary's use of 20 C.F.R. § 416.922 conflicted with the Act's requirement that the combined effects of all of a claimant's impairments be considered in a disability determination. Third, the plaintiff claims that the Secretary's conclusion that the plaintiff is not disabled is not supported by substantial evidence.

### II.

First, the plaintiff challenges the validity of 20 C.F.R. § 416.920(c) as violative of the Social Security Act in that the regulation does not provide for the consideration of

vocational factors, i.e., age, education, and work experience. Instead, the regulation requires a claimant to establish that an impairment is "severe," i.e. that it significantly limits the ability to perform "basic work activities." As a result, the plaintiff claims that the "severity step" impermissibly increases the initial burden of establishing a *prima facie* case of disability.

The regulations in Part 416 of Title 20 of the Code of Federal Regulations govern disability claims by uninsured applicants and are very similar to the regulations in Part 404 governing disability claims by applicants insured under the Social Security system. The statutory requirements for establishing disability are similar in both Title II (insured applicants) and Title XVI (uninsured applicants) of the Act. 42 U.S.C. §§ 423(d) and 1382c(a)(3). The defendant Secretary administers the Supplemental Security Income (SSI) program and promulgates regulations and rulings interpreting the Social Security Act.

### A.

Prior to full consideration of the plaintiff's claims, a trip into the "byzantine labyrinth" of the Social Security Act and regulations is warranted. *See Wallschlaeger v. Schweiker,* 705 F.2d 191, 194 (7th Cir.1983). Under the SSI program, a claimant is considered disabled if he or she is unable:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months....

42 U.S.C. § 1382c(a)(3)(A). The Act further provides that "for purposes of" applying this definition, an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy....

42 U.S.C. § 1382c(a)(3)(B). The Secretary is authorized to establish rules and regulations, consistent with the Act, governing the determination of disability claims. 42 U.S.C. §§ 405(a) and 1383(d)(1).

Pursuant to this regulatory authority, the Secretary established a five-step sequential test for determining whether a claimant is disabled. 20 C.F.R. § 416.920. A finding that a claimant is disabled or not disabled at any point of the review process is conclusive and terminates the analysis. 20 C.F.R. § 416.920(a). First, an applicant who is currently working is presumptively not disabled. 20 C.F.R. § 416.920(b). Second, the Secretary determines, solely on the basis of medical factors, whether the claimant has a "severe" impairment which significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). Subsection (c), the "severity step," specifically provides that the Secretary will not consider age, education, or work experience at this second step. The plaintiff's first ground for reversal concerns an alleged increase in the burden of proof on disability claimants in this second step which is inconsistent with the Act.

Third, if an applicant is found to have a "severe" impairment within the scope of the second step, the Secretary considers whether the impairment is one which is listed in Appendix 1 of the Regulations or is equal to a specific listing. 20 C.F.R. § 416.920(d). If a claimant satisfies this third step, he or she is presumptively disabled. The fourth step is considered if a claimant's impairment, though deemed "severe" under the second step, is not a "listed" impairment. A claimant is not disabled under the fourth step if his or her "residual functional capacity" permits the performance of his or her past work. 20 C.F.R. § 416.920(e). Fifth, a claimant with a "severe" but not a "listed" impairment who is unable to do his or her past work is disabled if he or she cannot do other work in light of his or her age, education, and past

work experience. 20 C.F.R. § 416.920(f)(1). *See also Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir.1981). To calculate a claimant's ability to do past work, the Secretary generally uses a system of medical-vocational guidelines set forth in Subpart P, Appendix 2 of the Regulations.

The plaintiff was found to be not disabled at the second step of the sequential process when the ALJ found that he does not suffer from a "severe" impairment which would impair his ability to perform "basic work activity." (Tr. 77, 82.) The Regulations explicitly define what the Secretary means by a non-severe impairment:

> (a) Non-Severe Impairment. An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.

> (b) Basic Work Activities. When we talk about basic work activities, we mean the abilities and aptitude necessary to do most jobs. Examples of these include—

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

> (2) capacities for seeing, hearing, and speaking;

> (3) understanding, carrying out, and remembering simple instructions;

> (4) use of judgment;

> (5) responding appropriately to supervision, co-workers, and usual work situations; and

> (6) dealing with changes in a routine work setting.

20 C.F.R. § 416.921. Following the sequential evaluation process, the ALJ concluded, on medical factors alone, that the plaintiff does not suffer from a "severe" impairment which limits his ability to perform basic work functions.

### B.

The plaintiff claims that a fatal inconsistency exists between the "severity" requirement of 20 C.F.R. § 416.920(c) and the definition of disability in the Social Security Act. Specifically, the plaintiff argues that the use of medical factors alone to find that impairments which prevent a claimant from doing past work are not "severe," and thus not disabling, contravenes the Congressional intent that the Secretary consider age, education, and work experience during the disability determination process. Accordingly, the plaintiff claims that the "severity step" impermissibly increases a claimant's initial burden of proof. The ALJ found that the plaintiff was not disabled on medical factors alone without considering the severity of the plaintiff's impairments in light of his vocational characteristics. (Tr. 77, 82.)

In *Johnson v. Heckler*, 593 F.Supp. 375 (N.D.Ill.1984), the court determined that the "severity step" embodied in 20 C.F.R. § 416.920(c) impermissibly increases the claimant's statutory burden of proof. The court in *Johnson* found that, by substituting "basic work activity" in the second step for "previous work," the "severity step" increases the showing which a claimant must make in order to establish a *prima facie* case of disability. *Id.* at 380. For the following reasons, the court concurs with the result reached by the Northern District of Illinois in *Johnson*.

### 1.

The basic statutory definition of disability provides that:

> An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A). This definition requires consideration of both the medical condition and functional capabilities of a claimant. A claimant's inability to engage in any substantial gainful activity is established by reference to the claimant's age, education, and work experience. *See* 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.-971. The language "by reason of any medically determinable physical or mental impairment" is a clause limiting entitle-

ment to claimants who can demonstrate a medically determinable basis for their inability to work.

Congress, however, did not merely provide a statutory definition of disability. It also required the Secretary to adopt appropriate regulations. 42 U.S.C. § 405(a) provides:

> (a) The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

*See also* 42 U.S.C. § 1383(d)(1). Pursuant to this section, the Secretary is empowered to make affirmative rules and regulations to carry out the Act's mandate. These regulations, however, may not be "inconsistent with the provisions of" the Act.

Because the Social Security Act expressly entrusts the Secretary with implementing its disability provisions by regulation, judicial review is limited to a determination of whether the regulations exceed the Secretary's statutory authority and whether they are arbitrary and capricious. *Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983); *Herweg v. Ray,* 455 U.S. 265, 275, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982); *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). Implicit in such review is the rule that "regulations, in order to be valid, must be consistent with the statute under which they are promulgated." *Johnson v. Heckler,* 593 F.Supp. 375, 379 (N.D.Ill.1984), citing *United States v. Larionoff,* 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). An agency's interpretation of the statute cannot supercede the statutory language. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–16,

91 S.Ct. 814, 822–823, 28 L.Ed.2d 136 (1971). Because of the statutory authorization of the Secretary's regulatory power, a claimant attacking the regulations "must make a strong case of inconsistency with the statute" if he or she is to succeed. *See McCoy v. Schweiker,* 683 F.2d 1138, 1144 (8th Cir.1982) (en banc).

2.

The basic statutory definition of disability does not require that a claimant prove that he or she suffers from a "severe" impairment in order to establish a *prima facie* case of disability. 42 U.S.C. § 1382c(a)(3)(A) broadly refers to "any" impairment. Accordingly, a regulation requiring a claimant to show that he or she suffers from a medically determinable impairment would be logically consistent with the scope of the Social Security Act. A regulation, however, enabling the Secretary to deny disability benefits to a claimant whose ability to work is markedly restricted due to diagnosed physical or mental impairments because these impairments are not deemed "severe" runs counter to the language and scope of 42 U.S.C. § 1382c(a)(3)(A). In addition, 42 U.S.C. § 1382c(a)(3)(B) refers to an impairment which is "of such severity that" a claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience," perform any substantial gainful work.

While § 1382c(a)(3)(B) refers to the "severity" of a claimant's impairments, it clearly defines the requisite level of severity by reference to a claimant's present ability to work. Nothing in the statutory definition of disability suggests that the severity of an impairment is an independent variable that *alone* can serve as a basis for a finding that a claimant is not disabled. *See Smith v. Heckler,* 595 F.Supp. 1173, 1178 (E.D.Cal.1984). Similarly, no mention of severity is made in the definition of "impairment" in 42 U.S.C. § 1382c(a)(3)(C) (abnormalities demonstrable by clinical and laboratory diagnostic techniques). The Act does not suggest

that claimants with medically determinable abnormalities who are unable to do their past relevant work can be found not disabled prior to consideration of age, education, and work experience because their impairments do not meet a particular level of severity. Indeed, the Social Security Act provides that impairments are to be established as disabling by reference to a claimant's present ability to work in light of his or her medical condition and vocational characteristics. *See generally Hundrieser v. Heckler,* 582 F.Supp. 1231, 1236–37 (N.D.Ill.1984). If the "severity" concept were applied in a manner consistent with the Act, a finding that a claimant's impairment is not "severe" would subsume a finding that it does not prevent him from performing his past work. *See McCullough v. Heckler,* 583 F.Supp. 934, 939 (N.D.Ill.1984). Accordingly, the statutory language is fundamentally incompatible with that of the "severity step" in 20 C.F.R. § 416.920(c). The "severity step" permits the Secretary to deny benefits on medical factors alone after a claimant establishes his or her inability to perform past relevant work. On its face, the Social Security Act does not appear to require consideration of vocational factors and residual functional capacity at the second step of the sequential process. The court finds, however, that the "severity step" is invalid because it improperly increases a claimant's burden of establishing a *prima facie* case of disability as defined in the Social Security Act. *See Johnson v. Heckler,* 593 F.Supp. 375, 379 (N.D.Ill.1984); *see also Hundrieser v. Heckler,* 582 F.Supp. 1231, 1240 (N.D.Ill.1984).

■ A disability claimant carries the ultimate burden of persuasion, as well as the initial burden of going forward with the evidence. A claimant satisfies the burden of going forward and makes a *prima facie* case of disability upon a demonstration that certain impairments prevent the claimant from doing his or her past work. At that point, the burden of going forward shifts to the Secretary to establish the availability of another form of substantial gainful activity which the claimant could perform. *See generally Stark v. Weinberger,* 497 F.2d 1092, 1097–98 (7th Cir. 1974).

No change has been made in the statutory definition of disability to support a substantial increase in the burden which a claimant must meet in order to make out a *prima facie* case of disability. The inclusion of the phrase "basic work activities" in the "severity step", however, increases the showing which a claimant must make in order to establish a *prima facie* case of disability. While an impairment may not affect "basic work activities," it may still prevent a claimant from doing his or her previous work. *See Scruggs v. Schweiker,* 559 F.Supp. 100, 103 (M.D.Tenn.1982). The "severity step" has served to "short circuit" the disability analysis by a summary conclusion of non-disability without allowance for the specific findings concerning past work and vocational factors that are mandated by the statute. *Smith v. Heckler,* 595 F.Supp. 1173, 1179 (E.D.Cal.1984).

In contrast to the "severity step", the Social Security Act plainly states that a claimant need only show that an impairment prevents him from doing his previous work in order to make out a *prima facie* case of disability. *See Whitney v. Schweiker,* 695 F.2d 784, 786 (7th Cir.1982). In this case, the ALJ concluded that "a decision on whether the claimant is disabled cannot be based on work activity." (Tr. 77). The ALJ considered only medical factors in concluding that the plaintiff has no significant limitation of his ability to perform "basic work activity." (Tr. 77, 82.) Accordingly, the plaintiff was prevented from establishing a *prima facie* case under the existing burden of proof rules by showing that his impairments prevent him from performing his past relevant work. By finding that the plaintiff's impairment was not "severe," and thus not disabling, the Secretary in effect imposed a substantial additional requirement, i.e. proof of impairment severity, which the plaintiff must meet in order to make out a *prima facie* case of disability.

■ By requiring disability claimants unable to do their past work due to an impairment to also prove that their impairment is severe has the effect of significantly restricting entitlement. *See Hundrieser,* 582 F.Supp. at 1240. While substantial deference must be given to the Secretary in her administrative capacity, a significant change in the standards of entitlement is not permissible administrative action, absent some expression of Congressional assent. Accordingly, since the "severity step" increases a claimant's burden of proof as defined by the Social Security Act, the regulation is inconsistent with the Act and is beyond the scope of the Secretary's statutory authority. 42 U.S.C. §§ 405(a) and 1383(d)(1). *See also McCoy v. Schweiker,* 683 F.2d 1138, 1143–44 (8th Cir. 1982) (en banc).

### 3.

The five-step sequential processes in Parts 404 and 416 of the Regulations were intended to be a "consolidation and elaboration of longstanding medical-vocational evaluation policies." *See* 43 Fed.Reg. 9284, 9295 (March 7, 1978). The purpose of the sequential tests was "not to increase or decrease the allowance/denial ratio ...," *id.,* but to improve "program efficiency ... by limiting the number of cases in which it would be necessary to follow the vocational evaluations sequence ...." *See* 45 Fed. Reg. 55574 (Aug. 20, 1980). The "severity step" apparently was meant to be used to support a finding of "not disabled" only in those instances where an impairment is presumptively not disabling, i.e. when no person suffering from that impairment would be found disabled. *See* 42 Fed.Reg. 9284, 9296 (March 7, 1978); *see also Hun-*

*drieser v. Heckler,* 582 F.Supp. 1231, 1239 (N.D.Ill.1984). Accordingly, the administrative history of the "severity step" indicates that it was intended to be no more than a restatement of existing regulations and was meant to apply only to the narrow cases where impairments are so minor that no person with such impairments could be found to be disabled. *See Hundrieser,* 582 F.Supp. at 1239 and the authorities cited. The "severity step" then is meant to be a short-cut procedure designed to save the administrative effort needed to process claims which supposedly are predictably groundless. *See Baeder v. Heckler,* 592 F.Supp. 1489, 1496 (D.N.J.1984); *McCullough v. Heckler,* 583 F.Supp. 934, 937 (N.D.Ill.1984). Courts, however, have recognized that the Secretary's decisions are often "result oriented," despite the minor role originally contemplated for the concept of severity. *See Baeder,* 592 F.Supp. at 1501; *McCullough,* 583 F.Supp. at 938. The efficiency rationale underlying the "severity step," i.e. to limit the number of cases in which vocational factors would be considered, apparently can be accomplished by increasing the number of claims denied on medical grounds alone.

Several courts have viewed the conflict between the statutory definition of severity and the "severity step" as resulting from an overbroad interpretation of the regulation by the Secretary. *See e.g. Hundrieser,* 582 F.Supp. at 1241. *See also Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984) (per curiam); *Oster v. Heckler,* 594 F.Supp. 523, 526 (D.N.D.1984); *Trafton v. Heckler,* 575 F.Supp. 742, 745 (D.Me.1983).[1] These decisions recognize the "severity step" to be an initial *de minimus* requirement and

---

**1.** The Seventh and Fifth Circuits have assumed the validity of the "severity step" without detailed examination. *Wallschlaeger v. Schweiker,* 705 F.2d 191 (7th Cir.1983); *Lofton v. Schweiker,* 653 F.2d 215 (5th Cir.1981) *cert. denied* 454 U.S. 1089, 102 S.Ct. 651, 70 L.Ed.2d 626. Other courts have noted the conflict between the "severity step" and the statutory definition of disability, but have declined to rule on the issue. *Keith v. Heckler,* 732 F.2d 1089 (2nd Cir.1984); *Delgado v. Heckler,* 722 F.2d 570 (9th Cir.1983); *Chico v. Schweiker,* 710 F.2d 947 (2nd Cir.1983).

*See also Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5 (1st Cir.1982) (claimant did not challenge validity of severity step). Indeed, several courts have upheld the validity of the severity step as consistent with the Act. *Gist v. Secretary of Health and Human Services,* 736 F.2d 352, 357 (6th Cir.1984); *Moore v. Heckler,* 575 F.Supp. 180, 182–83 (D.Me.1983). *See also Hilton v. Schweiker,* No. 81–1139, slip op. (10th Cir. February 26, 1982); *Chapman v. Schweiker,* No. 81–1025, slip op. (10th Cir. February 26, 1982).

that the bulk of disability terminations would be accomplished through reference to a claimant's work experience, age, and education, in combination with his impairments. The regulation, however, does not use language applicable to a *de minimus* threshold standard. The "severity step" does not describe non-severe impairments as those with such a minimal effect that they would not interfere with a claimant's ability to work regardless of age, education, and work experience. Instead, the regulation requires proof by medical factors of a "severe" impairment which limits basic work abilities without consideration of age, education, and work experience.

The basic conflict, however, arises from the regulation's reference to "basic work activities" instead of the statutory reference to "previous work." *See Johnson v. Heckler,* 593 F.Supp. 375, 381 (N.D.Ill. 1984). While not expressly invalidating the "severity step," the Middle District of Tennessee ruled that where the Secretary ends the evaluation process with the "severity step" the court would assume on review that the ALJ would have found a plaintiff able to return to his or her past work had the evaluation continued. *Scruggs v. Schweiker,* 559 F.Supp. 100, 103 (M.D. Tenn.1982). The court in *Scruggs* criticized the "severity step" for failing to provide for consideration of clinically established impairments in relation to a claimant's vocational characteristics. *Id. See also Smith v. Heckler,* 595 F.Supp. 1173, 1179–80 (E.D.Cal.1984); *Dixon v. Heckler,* 589 F.Supp. 1494, 1502–10 (S.D.N.Y.1984) (courts preliminarily enjoin use of severity step).

The District of New Jersey has recognized that a generalized or implicit vocational component, i.e. basic work activities, included in the "severity step" is "a demonstrably *false* assumption which can result in the denial of benefits to whole groups of persons who clearly meet the legislative definition of disability." *Baeder v. Heckler,* 592 F.Supp. 1489, 1500 (D.N.J.1984). The Court in *Baeder* recognized that, without such a vocational assumption, the Sec-

retary could not determine whether a claimant's impairment would lead to an eventual finding of disability/non-disability without actually proceeding through the remaining steps in the sequential evaluation process. *Id.* Accordingly, the Court in *Baeder* found that the "severity step" is not rationally related to the statute and, therefore, is invalid. *Id.* Similarly, the regulation's reference to "basic work activities" is inconsistent with the Act's reference to "previous work." Consequently, the application of the "basic work activities" standard impermissibly increases the burden on the claimant in establishing a *prima facie* case of disability. Such a *prima facie* case is established simply by a showing that an impairment prevents a claimant from performing his or her relevant previous work. *Stark v. Weinberger,* 497 F.2d 1092, 1097–98 (7th Cir.1974).

The invalidation of 20 C.F.R. § 416.920(c) is not as disruptive to the administrative procedures of the agency as first might be suspected. Since the sequential evaluation process was not intended to increase or decrease the allowance/denial ratio, but was meant to improve administrative efficiency, the effect of § 416.920(c) to deny benefits to those who make a preliminary showing of inability to perform past work is contrary to the Secretary's own intentions. *See Baeder,* 592 F.Supp. at 1501. The function of the "severity step" also would be subsumed in steps four and five, under subsections (e) and (f). The vocational evaluation guides can operate as efficiently as the "severity step" in cases involving an impairment which is not severe. *See Lofton v. Schweiker,* 653 F.2d 215, 217–18, n. 1 (5th Cir.1981), *cert. denied* 454 U.S. 1089, 102 S.Ct. 651, 70 L.Ed.2d 626. The Secretary also will be able to make disability determinations on a more individualized basis, a result that the Act encourages. *See* 42 U.S.C. § 1382c(a)(3)(B). *See also Heckler v. Campbell,* 461 U.S. 458, 468, 103 S.Ct. 1952, 1958, 76 L.Ed.2d 66 (1983).

Even giving the "severity step" a narrow construction, the basic conflict between the

regulatory and statutory language would remain. The plaintiff has shown a fatal inconsistency between the Act and the "severity step." *See McCoy v. Schweiker*, 683 F.2d 1138, 1143–44 (8th Cir.1982) (en banc). The Secretary's use of the "severity step" constitutes a substantive rewriting of the Act. The regulation cannot be reconciled with the statutory language and the existing burden of proof rules. Accordingly, the court finds 20 C.F.R. § 415.920(c), the "severity step," to be invalid, as it impermissibly increases a claimant's burden of establishing a *prima facie* case of disability.

### III.

An alternative ground for remand is the absence of support for the Secretary's conclusion that the plaintiff does not suffer from a "severe" impairment, even under the "severity step." In determining whether the Administrative Law Judge's findings are supported by substantial evidence, the court must decide whether the record contains such relevant evidence as a reasonable person might accept as adequate to support the findings. *See Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is not the function of the court on review to try the case *de novo* or to supplant the Administrative Law Judge's findings with the court's own assessment of the evidence. This court can only determine whether the Administrative Law Judge's findings were supported by substantial evidence. *See Cummins v. Schweiker*, 670 F.2d 81, 83 (7th Cir.1982).

### A.

The plaintiff is fifty-two years of age, and his formal education ended after the eighth grade. His employment history consists of bartending and trade work. (Tr. 96, 118.) He last worked in the summer of 1980. (Tr. 96–98.) Since that time, the plaintiff has lived, for the most part, in nursing homes, alcohol treatment centers, and a state mental health center. He has lived with his family for only a short period. (Tr. 199–202, 231–35, 263, 270, 276–290, 311–312.)

The record reveals that the plaintiff suffers from several impairments, including cardiovascular and respiratory problems. (Tr. 209, 235–39, 264). Records state that the plaintiff suffers from personality disorders. The diagnoses have ranged from passive-aggressive to inadequacy. (Tr. 248, 279.) The plaintiff also has suffered from differing levels of depression. (Tr. 238, 323.) The plaintiff's behavioral history has been that of hostility and abusiveness. (Tr. 203, 286, 330–36.) On several occasions, police officers were called to the plaintiff's hospitals and nursing homes to restrain the plaintiff. (Tr. 260, 299, 334–35.) In November, 1983, the plaintiff was admitted to a state mental health center with a diagnosis of "explosive personality" and paranoia. (Tr. 322.) Throughout his hospitalization, the plaintiff continued to have problems controlling his aggressiveness. (Tr. 30–40.)

The plaintiff also has a history of alcoholism and has been admitted to several treatment programs. (Tr. 199–201, 312.) Physicians have diagnosed the plaintiff as a alcoholic. (Tr. 105, 209, 231.) Several incidents at the nursing homes were the result of the plaintiff's alcohol consumption. (Tr. 259–62.)

### B.

▮ The record reveals that the plaintiff's cardiovascular impairments alone significantly limit his ability to perform basic work activities. The ALJ found that no residual effects exist which would indicate any prior heart attacks. (Tr. 81.) A report from W.C. Piotrowski, M.D., an examining physician, however, revealed that the plaintiff suffers from heart disease with a possible infarct of undetermined age. (Tr. 264.) Indeed, an agency examiner reported abnormal electrocardiogram results on May 22, 1982. (Tr. 220.)

▮ The ALJ also did not credit the plaintiff's testimony regarding chest pains. (Tr. 82.) The plaintiff's chest pains, how-

ever, have been found to be consistent with angina. (Tr. 49, 208, 266, 270.) Indeed, Dr. Radecki diagnosed the plaintiff as suffering from chronic obstructive pulmonary disease. (Tr. 230, 237.) The plaintiff also has worn a nitroglycerin patch for some time. (Tr. 77, 114, 329.)

The ALJ also considered the plaintiff's respiratory problems to be presumptively not severe. (Tr. 81–82.) Examining and treating physicians, however, have noted the plaintiff's respiratory disorders. (Tr. 13, 236–40, 247.) Norma Mason, M.D., the plaintiff's treating physician at the Adolf Meyer Mental Health Center, found that minimal exertions dramatically increased the plaintiff's respirations and pulse. (Tr. 13.) Dr. Mason opined that employment would only exacerbate the plaintiff's cardiovascular problems. (Tr. 13.) Dr. Radecki also noted that the plaintiff's heart disease would prevent any gainful employment. (Tr. 240.) Accordingly, the court finds that the Secretary's finding that the plaintiff's cardiovascular disease would not hinder basic work activities is not supported by substantial evidence.

The ALJ also found the plaintiff's testimony regarding his leg pains not to be credible. (Tr. 82.) Physicians, however, have noted intermittent claudication when the plaintiff walks even short distances. (Tr. 237, 266.) Paul Yardy, M.D., also diagnosed the plaintiff as suffering from degenerative joint disease. (Tr. 45.) His reports are consistent with the plaintiff's complaints of pain while walking. (Tr. 111.) Accordingly, the plaintiff's subjective complaints of leg pain and immobility deserved greater consideration. *See Szulyk v. Heckler,* 575 F.Supp. 1266, 1268 (N.D.Ill.1984).

■■■ Finally, the plaintiff's personality disorders also would significantly limit his ability to perform basic work activities. The plaintiff has a long history of bizarre and assaultive behavior. Examining physicians have noticed his belligerent, hostile attitude. (Tr. 203, 286, 330–34.) Indeed, the plaintiff struck and verbally abused other nursing home residents. (Tr. 129–31,

330–36.) These incidents often were a result of the plaintiff's alcoholism, but also have been linked to a generally explosive personality. Dr. Mason noted that the plaintiff's abusive nature would prevent him from working with others, particularly in responding to directions. (Tr. 9.) A vocational expert also testified before the ALJ that the plaintiff's belligerent personality would hinder his work abilities. (Tr. 141–42.) Generally, the plaintiff is hostile to persons in positions of authority. (Tr. 9, 130–31.) These personality disorders appear to limit the plaintiff's ability to perform basic work activities. *See* 20 C.F.R. § 416.921.

### IV.

The plaintiff also claims that the Secretary's use of 20 C.F.R. § 416.922 conflicted with the Act's requirement that the combined effect of all impairments be considered. Section 416.922 provides that the Secretary "will consider the combined effects of unrelated impairments only if all are *severe* and expected to last twelve months." (Emphasis added.) *See also* Social Security Rulings 82–55 and 82–56.

■■■ The statutory definition of disability provides that "an individual shall be determined to be under a disability only if his physical or mental impairment *or impairments* are of such severity" that he or she is unable to perform previous work or any other kind of substantial gainful work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added). The statute defines "impairment" as resulting from clinically diagnosed abnormalities. 42 U.S.C. § 1382c(a)(3)(C). The plain meaning of the statutory provision provides that evidence of abnormalities must be considered in combination to determine whether a condition meets the requisite level of severity, when considered with vocational factors, to satisfy the Act's disability requirements. The provision in § 416.922 that unrelated impairments would be considered in combination only if *each* abnormality is severe is contrary to the plain meaning of the statute.

On March 4, 1985, the Social Security Administration promulgated interim regulations implementing the 1984 Social Security Benefits Reform Act requirement that the combined effects of impairments must be considered even when the impairments evaluated singly might be found not severe. 50 Fed.Reg. 8726 (March 4, 1985). Accordingly, 20 C.F.R. § 416.922 was amended to comply with the Reform Act. The Secretary claims that no requirement existed prior to the 1984 amendments that the Secretary was to have considered the combined effect of allegedly non-severe impairments and that the 1984 amendments cannot be given retroactive effect.

The courts have long recognized, however, that the Secretary must evaluate the effect of several concurrent impairments in the disability determination process. *See e.g. Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2nd Cir.1975); *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3rd Cir.1971). *See also Bledsoe v. Richardson*, 469 F.2d 1288, 1290–92 (7th Cir.1972) (physician's evaluation of claimant's impairments in combination valid). The Secretary may not fragmentize a claimant's various impairments. *See Johnson v. Hecker*, 593 F.Supp. 375, 381 (N.D.Ill.1984); *Michel v. Califano*, 480 F.Supp. 195, 197 (M.D.La.1979). The Secretary must view a claimant as a whole in evaluating whether that person is capable of engaging in gainful activity. *See Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir.1974). Disability may result from a number of impairments, which alone may not be disabling, but which together may render a claimant unable to perform substantial gainful activity. *See Ramirez v. Schweiker*, 554 F.Supp. 1022, 1025 (S.D.N.Y.1983); *Griggs v. Schweiker*, 545 F.Supp. 475, 477 (S.D.W.Va.1982). Accordingly, the plaintiff's impairments merited consideration in combination.

■ Alternatively, the Secretary claims that the ALJ actually considered the plaintiff's impairments in combination. In his findings, the ALJ stated that the plaintiff "does not have any impairment *or impairments* which significantly limit his ability to perform basic work related function." (Tr. 82, emphasis added.) The ALJ also made a listing of the plaintiff's impairments. (Tr. 8.) In this list, however, the ALJ appears to have considered the effect of each separate impairment, e.g. alcohol addiction without evidence of significant end organ damage. In addition, the ALJ listed several impairments which are considered not to be disabling when considered separately under Social Security Ruling 82–55. (Tr. 81.) Accordingly, the court finds that the ALJ failed to consider the combined effects of the plaintiff's impairments. The plain meaning of the statutory disability provisions requires consideration of the plaintiff's concurrent abnormalities, even if each impairment would be considered non-severe if standing alone.

The Secretary's application of § 416.922 in this case failed to consider the plaintiff's impairments in combination, and was inconsistent with the plain meaning of the statutory disability provisions and with judicial interpretation of the Act and Regulations. Accordingly, on remand, the Secretary must consider the plaintiff's impairments in combination.

## V.

In sum, the cause must be remanded for determination of the plaintiff's entitlement to disability benefits without the application of 20 C.F.R. § 416.920(c). The "severity step" impermissibly increases the burden of establishing a *prima facie* case of disability by substituting "basic work activities" for "previous work." Accordingly, § 416.920(c) is violative of 42 U.S.C. § 1382c(a)(3)(A–C).

The evidence in the administrative record requires a finding that the Secretary's decision is not supported by substantial evidence, particularly since the ALJ based his conclusions solely upon medical factors. (Tr. 77.) On remand, the Secretary must consider the combined effects of the plaintiff's impairments and the plaintiff's vocational characteristics. The Secretary then must proceed to the next steps in the se-

quential evaluation process. *See* 20 C.F.R. § 416.920(d–f).

IT IS THEREFORE ORDERED that the final decision of the Secretary be, and hereby is, reversed and remanded to the Secretary for determination of the plaintiff's entitlement to disability benefits without the application of the severity regulation, 20 C.F.R. § 416.920(c).

IT IS FURTHER ORDERED that the cause be, and hereby is, reversed as unsupported by substantial evidence.

IT IS FURTHER ORDERED that the cause be, and hereby is, remanded for the consideration of the combined effect of the plaintiff's impairments.